## THE COMMERCIAL BANK OF ROCHESTER *vs.* THE CITY OF ROCHESTER.

In general, money paid by a party acting under no constraint, compulsion or duress, and with full knowledge of all the facts, can not be recovered back.

This rule is intended solely for the protection of the party receiving the money; and it is competent for him to waive the benefit of the rule, by a valid agreement to that effect.

It is applicable to those cases in which a party, with full knowledge of all the facts, voluntarily pays money in satisfaction or discharge of a demand unjustly made on him, even though he should protest, at the time of such payment, that he was not legally bound to pay the same.

A banking association having been assessed and taxed, by a municipal corporation, for a portion of its capital which was invested in United States stocks, and which it was claimed were exempt from taxation; and the common council, having confirmed the assessment, directed the collection of the taxes thereon; it subsequently, on the application of the bank, adopted a resolution, by which it agreed that in case the bank should pay its tax and assessment at any time prior to the issuing of a warrant for the collection thereof, such payment should not " be treated or regarded as a voluntary payment, but as a payment under protest, and after the issuing of such warrant and a levy upon its property to enforce such payment." On the faith of this resolution the bank paid the amount of the tax. In an action to recover back the money so paid; *it was held* that the common council, in passing the resolution, exceeded their rightful powers; and that the resolution being unauthorized, and void, the payment must be regarded as voluntary; and hence it could not be recovered back. E. DARWIN SMITH, J. dissented.

Those who deal with the agents of a municipal corporation must take notice of the restrictions in its charter, in respect to the powers of the corporation and its agents, and the mode in which such powers may be exercised; and must see to it that the contracts on which they rely are authorized by the charter.

APPEAL from a judgment ordered at a special term, overruling a demurrer to the complaint. The action was brought to recover back the sum of $1460, unlawfully collected of the plaintiff; as was claimed, by assessing and taxing it for a portion of its capital, to wit, $100,000, invested in United States stocks. The complaint alleged that it was a banking association, duly organized under the laws of the state, and located at Rochester, and that as such it

had a *capital stock*, paid in and secured, amounting to the sum of $500,000; that a portion of said capital stock, to wit, the sum of $75,748 was invested in and represented by real estate situate in the city of Rochester, held and owned by said plaintiff, and either necessary for its immediate accommodation in the convenient transaction of its business, or purchased by said plaintiff under deeds or mortgages, held by it and given to secure some portion of the said *capital stock*. That the aggregate amount of its *personal property* was $424,252; "that of this amount of *personal property*, part thereof, to wit, the sum of $100,000, now is and for one year or upwards last past, *has been* invested in and represented by public stocks of the United States, being portions of several of the loans of the *United States*, which said United States stocks are and for one year or thereabouts last past, have been deposited and held by the superintendent of the banking department of the state of New York as security for the circulating notes of said bank, under and in pursuance of the laws of the state of New York, and that the balance of said personal property, amounting to the sum of $324,252, has been and is invested in and represented by money and securities other than real estate and United States or government loans."

The plaintiff further alleged the due incorporation of the defendant as a municipal corporation, and that as such it was authorized and empowered annually to direct the raising, assessment and collection of such sums by assessment and tax as might be necessary for defraying the expenses of the government of the city; that among the officers and agents of the defendant are three assessors, who form and constitute the board of assessors, whose duty it is to make an annual assessment of the property in the city, not exempt from assessment and taxation, for the purpose of enabling the defendant, by its common council, to levy the necessary taxes and assessments to defray the expenses of the city government; that among other things, after having made

such assessment, it is made the duty of said assessors, on or before the fifteenth day of June in each year, to deliver to the clerk of said city the assessment roll so made by them. That said assessors, after making said assessments for the year 1860, to wit, on or about the 1st day of June, 1860, met at their office in the said city, for the purpose of hearing allegations on behalf of such parties as might feel aggrieved by such assessment, and of making corrections, if by them deemed expedient, to the assessments so made. And the plaintiff averred that upon examining said assessment rolls containing the assessments in respect to the plaintiff for the year 1860, it appeared, and so was the fact, that said assessors had assessed on account of personal property belonging to it, the full sum of $424,252. That on or about the first day of June, 1860, the plaintiff made, or caused to be made, in all respects as required by law, and delivered to the assessors of the said city of Rochester, that being the place in which the plaintiff was liable to be taxed, a written statement, made and signed by its vice president and financial officer, he being the proper officer for that purpose, duly certified, under the oath of said vice president to be in all respects just and true, specifying the real estate owned by the plaintiff in the town or ward in which the same was situated, and the sums actually paid therefor; also the capital stock actually paid in and secured to be paid in, excepting therefrom the sums paid for real estate; and that in and by said statement, so made, certified and delivered, as aforesaid, it further appeared that a portion of the personal property or stock of said bank, so paid and secured, as aforesaid, to wit, the sum of $100,000, had been and was at the time of the making and delivering of said statement and making of said assessment, invested in and represented by United States stocks, being parts of several loans of the government of the United States, which stocks are not and were not, as the plaintiff was advised and believed, liable to assessment or taxation, or legally taxable by or for the benefit

of the defendant; and the plaintiff claimed and insisted before said assessors, that said United States stocks were exempt from taxation, and ought not to be assessed as a part of the taxable property and capital of the plaintiff, and requested the assessors to assess the personal property of the plaintiff at the said sum of $424,252, less the said sum of $100,000, part thereof so invested in United States stocks, leaving a balance of said personal property liable to be assessed, amounting to the sum of $324,252 and no more. Yet the said assessors wholly refused to allow or deduct the said sum of $100,000, from the amount of said personal property so assessed, but did assess the plaintiff as and for personal property, the full sum of $424,252, and thereupon and on the same day of the date of their decision refusing to make the deduction claimed, to wit, shortly prior to the 12th day of June, 1860, delivered over to the said city clerk the assessment rolls aforesaid. And the plaintiff further alleged that afterwards, and on or about the 12th day of June, 1860, subsequent to the delivery of said assessment rolls to the city clerk, and prior to the levying of the taxes thereupon by the defendant, the plaintiff, by its vice president and financial officer aforesaid, stated and represented to the common council of said city, in writing, that the assessors had assessed the personal property of the plaintiff at $424,252, whereas it should not exceed the sum of $324,252; that said assessors had erred in refusing to deduct the sum of $100,000, part of the personal property of the plaintiff so invested in the public stocks of the government of the United States, and in disregarding the statement and certificate of the plaintiff, so delivered to said assessors, and requested and asked the defendant, by its common council, to correct said error and assessment, and remit from said assessment the sum of $100,000. But the defendant, by its common council, refused to correct the assessment, or to remit the same, or any part thereof; that afterwards and on or about the 12th day of June, 1860, the defendant, by its common council, did

confirm said assessment and levy, and direct the collection of the taxes thereupon; that the amount so assessed, levied and directed to be collected of the plaintiff on account of its personal property, to wit, upon the assessment of $424,252 personal property, as aforesaid, was and is the sum of $6194.07; that of this sum the sum of $1460 was the taxes upon $100,000 of the personal property of the plaintiff so invested in the public stocks of the United States, as aforesaid, which in like manner the defendant, by its said common council, did levy upon the property of the plaintiff, and order and direct to be collected of the plaintiff. The plaintiff further alleged that afterwards, and on or about the 24th day of July, 1860, at a regular meeting of the said common council, and upon application of the plaintiff therefor, the said common council duly passed and adopted the following resolution: "Resolved, That in case the Commercial Bank shall pay its tax and assessment at any time prior to the issuing of a warrant for the collection thereof, such payment shall not be treated or regarded as a voluntary payment, but as a payment under protest and after the issuing of such warrant and a levy upon its property to enforce such payment." That thereafter, and on or about the 28th day of July, 1860, and prior to the issuing of any warrant for the collection of said tax and assessment under and in pursuance of the authority, consent and agreement granted and entered into by the defendant, through its said common council, and upon the faith thereof and not otherwise, the plaintiff did pay to the defendant, and the defendant did receive the said sum of $6194.07, being the amount of said tax so assessed upon the whole of its personal property, including the said sum of $1460, the tax upon said $100,000 of personal property so exempt as aforesaid. And the plaintiff further averréd that it was advised and believed and therefore claimed that the said portion of its personal property so invested in United States stocks, as aforesaid, was not liable or subject to assessment or taxation; that the assessors erred in assess-

ing such portion, as well as the defendant in confirming such assessment, and levying and collecting the taxes thereupon; that such assessment and tax were and are illegal and void, and that the plaintiff was unjustly and illegally compelled by said defendant to pay and did pay to the defendant the sum of $1460, being part of the tax so paid, as aforesaid, and being the portion of said tax so assessed upon that part of the said personal property invested in and represented by United States stocks, and so exempt from assessment and taxation, as aforesaid. The plaintiff alleged a demand of the money, and refusal, and prayed judgment for the $1460, with interest.

The defendant put in a general demurrer to this complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, at a special term, and judgment ordered for the plaintiff thereon.

*Geo. W. Miller,* for the appellant. I. According to the judgment in this case, the plaintiff can not recover if the money was paid voluntarily. The learned justice who delivered the opinion recognizes the rule as laid down by Ruggles, justice, in *Harmony v. Bingham,* (2 *Kern.* 116,) as well settled law. The passage of the resolution makes the payment none the less voluntary. There was no seizure of person or goods, in fact, nor even a warrant issued. The resolution was procured to be passed by the plaintiff itself; and every thing has been done by the plaintiff freely and in full view and knowledge of all the facts involved.

II. The resolution does not estop the defendant from availing itself of this defense. It of course does not constitute a technical estoppel, and does not come within any of the well considered definitions of an *estoppel in pais.* (1.) It contained no representation of any fact or facts either true or false. (*Lawrence v. Brown,* 5 *N. Y. Rep.* 395. *Pickard v. Sears,* 6 *Adolph. & Ellis,* 469.) (2.) There was neither false representation, fraud or concealment, on the part of the defendant; all the facts and circumstances hav-

ing any relation to the matter of the taxation of the bank were entirely within the knowledge of the plaintiff. (*Martin* v. *Angell*, 7 *Barb.* 407. *Welland Canal Co.* v. *Hathaway*, 8 *Wend.* 480. *Gregg* v. *Wells*, 10 *Adolph. & Ellis*, 90.) (3.) A representation involving merely a conclusion of law, even if false, constitutes no estoppel. (*Brewster* v. *Striker*, 2 *Comst.* 19–41. 4 *E. D. Smith*, 756.) (4.) A party has no right to depend upon a statement or agreement of another party, that he will consider a thing or an act that which both well know it is not. (5.) There was nothing reciprocal in the resolution, no consideration, and no agreement on the part of the plaintiff. It bound the plaintiff to nothing, and could not bind the defendant. (8 *Wend.* 487.) (6.) The resolution is too indefinite to be relied on for any purpose. There is no reference in it to any particular tax or assessment, by date, amount or otherwise. (7.) An estoppel *in pais* can not be pleaded, and the complaint is to be considered as if the resolution was admitted. (8 *Wend.* 482.) (8.) The effect of the resolution can be no more than that of a protest, upon the payment; and payment being made under protest merely, does not entitle a party to recover the amount paid, if the claim was illegal. (1 *Day*, 133. *Fleetwood* v. *The City of New York*, 2 *Sandf.* 475–482. *Trinity Church* v. *Mayor of New York*, 10 *How.* 138.)

III. But if it should be held that there is any force in the fact of the passage of the resolution, it was incompetent for the common council to pass it. It was *ultra vires* and of no effect. (1.) The common council is not the corporation, but merely its agent. (2.) The acts of the common council must be strictly within the authority given by the charter, in order to bind the city. (3.) There is nothing in the charter authorizing the common council to make any agreement as to the effect of any payment of taxes to the treasurer. There is no special provision for that purpose, and it can not be fairly inferred from the general enumeration of the powers and duties of the common council. Title five of the charter

relates to "taxes, funds, revenue and expenditures." The common council are to examine and settle accounts, and direct the raising of money to pay the same and the expenses of the city, "*subject to the limitations and restrictions therein contained.*" (§ 101.) The subsequent sections show that with the collection of the taxes the common council has nothing whatever to do. The rolls with the mayor's warrant are delivered to the treasurer, and he alone has the control of the collection of the taxes. See section 106 of above title and following sections. Section 134 provides just what the common council can do in case of such mistake or error in any tax or assessment as makes it void, and all the power granted in such case is to "*remit*" if uncollected, or "*refund*" if collected.

IV. The plaintiff has mistaken its remedy. The validity or regularity of an assessment can not be tried in a collateral action. (*Chegaray* v. *Mayor, &c. of New York,* 13 *N. Y. Rep.* 220, *and cases cited* 223, 224.) No action will lie to recover money paid when jurisdiction is admitted, and the only question is one of amount, or the including an illegal item. (*Chegaray* v. *Jenkins,* 1 *Seld.* 381.)

V. If the assessment was erroneous, or too large, still the plaintiff has failed to comply with the requirements of the statute, in case of a party desiring the reduction of the amount of an assessment or valuation; and for this reason can not recover. (1.) Section 21, of chapter 13, of part 1, of revised statutes, provides what shall be done if a reduction of valuation of real or personal estate is desired, and this section applies as well to corporations as individuals. (*See also* § 18 *of same chap. and also* § 3, *chap.* 536, *Laws of* 1857. *Ontario Bank* v. *Bunnell,* 10 *Wend.* 186.) (2.) An affidavit, to be of any effect under this section, must be the *examination* in presence of and reduced to writing, and sworn to before the assessors or one of them. See language of the section. (§ 6, *ch.* 536, *Laws of* 1857. 15 *Barb.* 607.) The only affidavit used in this case was the ordinary statement or

certificate of the financial officer of the bank required by section 2, of title 4, chapter 13, of revised statutes. (3.) The affidavit should have been set forth in the complaint, so that the court should see whether it was sufficient, or of any effect.

VI. But aside from all questions of remedy, regularity, &c. it is now submitted that the assessment was entirely correct and legal; that the fact of a portion of the capital stock of the plaintiff having been invested in United States stocks did not exempt it from taxation under the laws of this state as they stood in 1857 and 1860. It is claimed that the real purport, extent and effect of the recent decision of the supreme court of the United States, in the case of *The People ex rel. The Bank of Commerce* v. *The Commissioners of Taxes of New York*, (25 *How. Pr. Rep.* 9,) has been misapprehended, and that the judgment of the supreme court of this state, or rather the positions taken by the supreme court of this state in the case of *The People ex rel. Bank of the Commonwealth* v. *Commissioners of Taxes of New York*, have never been reviewed or controverted by the court of appeals or the United States supreme court. The question upon which the case turned in the New York supreme court, was discussed by Judge Denio, in his opinion delivered in the court of appeals. (23 *N. Y. Rep.* 192.) The case in the supreme court is reported in 32 Barbour, 509, but was not passed upon by that court, and four of the judges are understood (says the reporter) to have expressed a different opinion from that stated by Judge Denio. The court of appeals decided that United States stocks, whether owned by individuals or corporations, were taxable under state laws. The judgment of the court of appeals was reversed in the United States supreme court, but there the question passed upon by the state supreme court, and discussed by Judge Denio, was not passed upon, and seems not to have been argued at all. So it seems that now the highest authority we have upon this question, of the liability of bank stock or

Commercial Bank of Rochester *v.* City of Rochester.

the capital stock of banks of this state to taxation, under the laws of 1857, regardless of what it may have been invested in, is the decision of the supreme court of this state. This whole question has been again carefully and ably reviewed and passed upon in the late case of *The People ex rel. The Bank of Commerce of New York* v. *The Commissioners of Taxes, &c. of New York*, by Sutherland, P. J. (40 *Barb.* 334,) and this court should follow that decision.

*Strong & Mumford*, for the respondent. I. The assessment of the plaintiff, in respect to the $100,000 of United States stocks, owned by it, and compelling it to pay the tax thereon, was unauthorized by, and against, the law. The recent decision of the supreme court of the United States, in *The People ex rel. The Bank of Commerce* v. *The Commissioners of Taxes, &c.* New York, is decisive of this point. The assessment of the plaintiff for those stocks, was without jurisdiction to do so, and therefore illegal and void; and may be impeached for that cause in a collateral action. (*Chegaray* v. *Jenkins*, 1 *Seld.* 381. *The Chemung Canal Bank* v. *Judson*, 4 *id.* 259. *Latham* v. *Edgerton*, 9 *Cowen*, 229, *and cases cited under second point.*)

II. An action against the defendant to recover back the amount unlawfully collected of it by the plaintiff is the appropriate legal remedy. (*In the matter of Mount Morris Square*, 2 *Hill*, 14, 28, 29. *Albany and West Stockbridge R. R. Co.* v. *The Town of Canaan*, 16 *Barb.* 244, 248, 249. *The People* v. *The City of Rochester*, 21 *id.* 656, 664, 665. *Joyner* v. *Third School District in Egremont*, 3 *Cush.* 567. *Preston* v. *The City of Boston*, 12 *Pick.* 7. *Boston and Sandwich Glass Co.* v. *The City of Boston*, 4 *Metcalf*, 180. *George* v. *School District in Mendon*, 6 *id.* 506. *The Amesburgh W. and C. Man. Co.* v. *Inhabitants of Amesburgh*, 17 *Mass. R.* 461.)

III. The resolution of the common council of the defendants, under and in pursuance of which the money in question

was paid, that the payment should not be treated or regarded as voluntary, but as under protest and after the issuing of a warrant, and a levy upon the property of the plaintiffs to enforce such payment, precludes the defendant from objecting that the payment in question was voluntary. (*Brisbane* v. *Dacres,* 5 *Taunt.* 144. *Boston and Sandwich Glass Co.* v. *City of Boston,* 4 *Metc.* 187, 188. *Preston* v. *The City of Boston,* 12 *Pick.* 13. *Clarke* v. *Dutcher,* 9 *Cowen,* 684, 686. *Mowatt* v. *Wright,* 1 *Wend.* 364.) The ground of the defense is, in short, that to allow a recovery in such a case would be injurious and unjust to the party who received the money; and the defense is allowed exclusively for his benefit. In this view of the reasons for the defense, it is manifestly competent for that party to waive the benefit of this rule of law and preclude himself from the defense, by his agreement. When an agreement to that effect is made, the case is taken out of the reasons for allowing the defense; all of them are inapplicable. The case is made by the agreement precisely as if the payment had *in fact* been compulsory. Each of these propositions would seem to be conclusive.

IV. The power of the common council to pass the resolution is unquestionable. By the charter of the city (*Laws of* 1850, *p.* 514, § 48,) it is provided that the common council "shall have the management and control of the finances, rights and interests, buildings and all property, real and personal, belonging to the city, and may make such orders and by-laws relating to the same as they shall deem proper and necessary." This covers the whole ground; and a reference to other parts of the charter from which the powers may be deduced is unnecessary. See Laws 1861, p. 277, § 40, as to the present powers of the common council.

JAMES C. SMITH, J. It appears by the allegations in the complaint, that the money which the plaintiffs seek to recover back in this action was paid by them with full knowledge of all the facts upon which their present claim is based,

and that they acted under no constraint, compulsion or duress. It is a familiar doctrine that, in general, money paid in such circumstances can not be recalled.

The plaintiffs do not controvert the general rule above stated, but they insist that the defendants are precluded from objecting that the payment in question was voluntary, by reason of the terms of a resolution adopted by their common council, on the faith of which the plaintiffs allege the payment was made. The resolution is in these words: "Resolved, that in case the Commercial Bank shall pay its tax and assessment at any time prior to the issuing of a warrant for the collection thereof, such payment, shall not be treated or regarded as a voluntary payment, but as a payment under protest, and after the issuing of such warrant and a levy upon its property to enforce such payment." If there were no question as to the power of the common council to bind the corporation, by the resolution referred to, I should have no difficulty in assenting to the plaintiffs' position. The rule that a voluntary payment can not be recovered back is intended solely for the protection of the party receiving the money, and it is undoubtedly competent for him to waive the benefit of the rule by a valid agreement to that effect. In *Brisbane* v. *Dacres*, (5 *Taunt.* 143,) Gibbs, J. said: " There are many doubtful questions of law; when they arise, the defendant has an option, either to litigate the question, or to submit to the demand, and pay the money. : I think that by submitting to the demand, he that pays the money *gives* it to the person to whom he pays it, and makes it his, and closes the transaction between them. He who receives it has a right to consider it as his without dispute; he spends it in confidence that it is his;. and. it would. be most mischievous and unjust if he who has acquiesced in the right by such voluntary payment should be at liberty, at any time within the statute of limitations,° to rip up the matter, and recover back the money. He who received it is not in the same condition; he has spent it in the confidence

it was his, and perhaps has no means of repayment." In the case in which the foregoing remarks were delivered the payment was made *without protest;* but the rule is also applicable to those cases in which a party, with full knowledge of all the facts, voluntarily pays money in satisfaction or discharge of a demand unjustly made on him, even though he should protest, at the time of such payment, that he was not legally bound to pay the same. *The Boston and Sandwich Glass Co.* v. *The City of Boston,* (4 *Metc.* 181,) was a case of that nature. Dewey, J. giving the opinion of the court, said : "The reason of the rule, and its propriety, are quite obvious, when applied to a case of payment upon a mere demand of money, unaccompanied with any power or authority to enforce such demand, except by a suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment. If it were not so, the effect would be to leave the party who pays the money the privilege of selecting his own time and convenience for litigation ; delaying it, as the case may be, until the evidence, which the other party would have relied upon to sustain his claim, may be lost by lapse of time and the various casualties to which human affairs are exposed."

These considerations show the value of the rule to the party receiving the money. They also suggest, in the case at bar, the importance of the question whether the common council had authority to make the agreement expressed in the resolution above transcribed. The resolution shows, on its face, that the payment was not compulsory *in fact*, and its express purpose was to waive the rule under consideration and subject the corporation to the mischiefs which the rule is designed to prevent. I cannot resist the conclusion that by their action in that respect the common council exceeded their rightful powers.

(1.) It is obvious that the inconveniences which would result from allowing voluntary payments to be recovered back, may be much more serious and hurtful in the case of a municipal corporation than in that of an individual, especially when, as in this case, the money sought to be recovered was received by the corporation in payment of a tax. The corporation must necessarily expend all the moneys received by tax during the same fiscal year in which they are received, and if afterwards called on to refund, it can only do so by imposing a new tax to raise money for the purpose. Assuming that such tax would be legal, it might work great injustice to individual tax payers, by falling on those who were not residents or property holders within the limits of the corporation when the moneys to be refunded were received and expended. And, on the other hand, as the party demanding the money of the corporation could choose his own time of doing so, and consequently of making the new tax necessary, he might delay till he had ceased to be a tax payer, and thus escape his share of the deficiency in the original tax. It seems to me clear that in the case before us, neither the common council nor the corporation whose agents they were, had authority to enter into an agreement which might work consequences so unjust to the individual tax payers of the city.

(2.) It is no answer to the position above stated, to say that the same consequences might have resulted if the tax, instead of being paid voluntarily by the plaintiffs, had been collected by compulsory process of law. By the charter of the city, the power of collecting and receiving taxes is vested, not in the common council, but exclusively in the city treasurer, and collectors appointed by him. (*Laws of* 1850, *ch.* 262, §§ 282, 106.) The treasurer is chosen by the electors of the corporation, (§ 9,) and the common council are expressly prohibited from appointing any other person to receive taxes, (§ 106.) The mode in which taxes shall be collected, when not paid voluntarily, is specifically pointed out, in the

charter. The common council have no duties or powers in connection therewith, except to cause the assessment roll with warrants annexed to be delivered to the treasurer. All proceedings thereunder are to be taken by that officer and his appointees. (*Charter*, §§ 108 *to* 121; *Laws of* 1858, *ch.* 80, *p.* 158, §§ 5, 6, 7.) If the common council had the power to collect, they could not exercise it in any other mode than that prescribed by statute. (5 *Barb.* 613. 2 *Bosw.* 173. 20 *N. Y. Rep.* 312.) The mode of collection prescribed by the charter is *uniform*. But if the resolution in question is upheld, what shall prevent the common council from making a special agreement with any other tax payer, on such terms as they think proper, to induce him to pay his tax before the compulsory process provided by the charter can be resorted to? Such a power in their hands would open a wide door for favoritism and corruption.

(3.) By the resolution in question, the common council, in order to induce a tax payer to pay his tax voluntarily, surrendered, as we have seen, a valuable right of the city. If they had gone a step further and bartered away the money of the city, as for instance, if they had agreed to allow interest, or to make a deduction from the amount of the tax, in consideration of its payment in advance of the issuing of a warrant for its collection, no argument would be needed to show the utter invalidity of their action. But upon the question of *power* I do not perceive that the case is altered by the circumstance that the thing bartered away is a legal right, instead of money or a chattel.

The only part of the charter to which the plaintiff has called our attention, upon the question of authority, is section 48, which provides that the common council "shall have the management and control of the finances, rights and interests, buildings and all property, real and personal, belonging to the city, and may make such rules and by-laws relating to the same, as they shall deem proper and necessary." This general provision does not confer upon the com-

mon council power to annul or disregard the special provisions of the charter, already adverted to, in respect to the collection and receipt of taxes.

The resolution of the common council being unauthorized, the payment must be regarded as voluntary. Those who deal with the agents of a municipal corporation must take notice of the restrictions in its charter, in respect to the powers of the corporation and its agents, and the mode in which such powers may be exercised, and must see to it that the contracts on which they rely are authorized by the charter. (*Brady* v. *Mayor &c.*, 20 *N. Y. Rep.* 312.) The plaintiffs are presumed, in law, to have known when they paid the money voluntarily, that the agreement which they now set up was void.

As the common council assumed to incur an obligation which even the corporation was not authorized to do by agreement, the corporation is not made liable by the fact that it has received the consideration for the obligation. A corporation can not, by subsequent ratification, make good an act of an agent which it could not have distinctly empowered. (*Hodges* v. *Buffalo*, 2 *Denio*, 110. *Halstead* v. *The Mayor &c.*, 3 *N. Y. Rep.* 430.) But, in fact, the question of ratification does not arise. The agreement being void, to the knowledge of the plaintiffs, the case is the same as if the payment had been made without the agreement. The defendants are exempt from liability for the reason that the payment was voluntary in fact, and there is no sound legal principle upon which it can be otherwise treated. ·

For the reasons above expressed, I think the judgment below should be reversed, and judgment entered for the defendants, on the demurrer.

WELLES, J. concurred.

E. DARWIN SMITH, J. (dissenting.) Upon the ground upon which the decision is put I can not concur with my

brethen in sustaining the demurrer to the complaint in this action. It seems to me that it carries the doctrine in respect to voluntary payments to an unreasonable extent. I agree that no recovery can or should be had where payment is freely made; when it is made upon a compromise of a doubtful or disputed claim; or where all defense to such claim is waived or relinquished intentionally or without such compulsion or coercion as amounts to a species of duress of the person or goods. I think the rule in respect to such compulsory payments as constitute an exception to the doctrine in respect to voluntary payments, is correctly settled in *Harmony* v. *Bingham*, (2 *Kern.* 100.)

The rule in respect to what would constitute a voluntary payment, when no recovery could be had for the restoration of money paid, or when the payment would be held compulsory and a recovery allowed, within the case of *Harmony* v. *Bingham*, was doubtless understood by the plaintiffs and by the defendants, or by their respective counsel under whose advice they acted, at the time of the payment of the tax in question in this action; and both parties doubtless had that case before them and understood its force, and acted in reference to the rule there laid down.

It is apparent, therefore, that the payment in question was not made or received with intention to waive the right of the plaintiffs to test the legality of the tax in question by subsequent litigation. Both parties clearly understood this, and there can be no pretense that the payment was intended to be a voluntary one, within the rule which forbids a recovery for such payment. The complaint states that the plaintiffs appeared before the assessors and there insisted that they were not liable to be assessed and taxed for the $100,000 of the United States securities, held by them as part of their capital; and that after the assessors had completed their roll, including an assessment for securities, they (the defendants) contested the question before the common council of the city, and opposed the confirmation of such assessment, and

requested the common council to correct the same. It was after all this had occurred, and when it was obviously well known to the common council of the city that the plaintiffs intended to litigate in the courts the question of their liability to taxation on such securities, that the common council passed the resolution referred to, in which they agree that "if the bank will pay their tax of $6194.07, before the time for the issue of the warrant for the collection of city taxes, that such payment shall not be treated or regarded as a voluntary payment, but as a payment under protest, and after the issuing of such warrant and a levy upon its property to enforce such payment." This resolution was passed July 24, 1860, and four days after—on the 28th—the plaintiffs paid their tax in conformity therewith, and before the issuing of the warrant for its collection; which could not, under the provisions of the charter, issue until after the 15th of December next thereafter. It will thus be seen that the consideration for the passage of such resolution was received as stipulated, and was the payment of the whole tax of the bank, $6,194.07, nearly five months before it could be collected by such a levy under a warrant for the collection thereof, and would unquestionably leave the plaintiffs at liberty to litigate the legality of such tax so far as the question of voluntary payment is concerned. I can not admit that a payment so procured, made and received, can fairly be considered *voluntary* within the rule which precludes a recovery for such payments.

The rule that voluntary payments can not be recovered is clearly for the sole benefit of the party receiving the payment, and it can not be doubted that such party may waive the objection, before or after suit brought; and it can not be denied that this resolution does upon its face anticipate and expressly waive such objection. It stipulates that "such payment shall not be treated or regarded as a voluntary payment." This is an agreement that in any suit or controversy about such tax no such objection shall be taken or made that the same was *voluntary*. And it says further, that such

payment shall be treated and regarded as if made upon a levy of the plaintiffs' property upon a proper warrant to enforce such payment. This is the stipulation, and if binding, it clearly precludes the defendants from urging in any court or place, or making the objection, that such payment was voluntary. It is a violation of contract and of good faith to make such objection, and I think it is the duty of the court to hold the defendants estopped from so doing in this action. The answer to this view, and which is sanctioned by the opinion of my brother Smith, is that the common council had no power to pass this resolution; that it was entirely unauthorized; and that the plaintiffs must be deemed to know that it was of no validity, and therefore their payment must be regarded as voluntary.

This, I think, is a mistaken view of the question, and of the power of the common council. It is true that the people of the city of Rochester constitute the body politic and corporate of such city; but for all substantial and practical purposes the mayor and aldermen, constituting the common council, are the actual corporation. The common council so composed is the legislative authority of the city, and represent the city, in the same sense that the state legislature represents the state. They are its acting and speaking power, and the only agency or voice by which it acts, speaks and contracts to bind itself or others.

By the express provision of the first section of the charter the inhabitants are incorporated by the name of the city of Rochester, with all the power conferred by the statutes of this state upon corporations, as well as those conferred by the charter itself. By the fortieth section of the charter it is declared that "The common council shall have the management and control of the fiscal and prudential affairs of said city, and of all property, real and personal, belonging to the city, and may make such orders and by-laws relating to the same as it shall deem proper and necessary." Here is an

express power to manage and control the fiscal and pruden- tial affairs of the city. There is a general power, designed to give the common council the amplest incidental power of oversight and control essential to the due exercise of all the special powers conferred by the charter, relating to the finan- cial interests and affairs of the city. Corporations, it is true, and this includes municipal corporations as well as others, can exercise no powers except such as are expressly granted. But every grant of power includes all the legiti- mate incidents of such power. The common council is au- thorized to lay and levy taxes and assessments. It makes contracts for public improvements, and for a great variety of work and service for the city. Now as incident to the exer- cise of all its powers over public works and public affairs, financial questions are constantly arising, as money is to be paid out and expended. The common council has a neces- sary incidental power over all the questions growing out of the collection and expenditure of the public money. No moneys can be paid out of the treasury except upon its orders, and its control over the moneys of the city is full and complete for the purpose of executing the powers conferred. It has necessarily power of control and contract over all the disputed questions which arise in the affairs of the city in the collection and disbursement of the public money. It can settle a controversy, or it can litigate disputed ques- tions. It must decide how and in what manner it will settle claims of the city against individuals, and claims of individ- uals against the city. It can not, of course, lawfully spend money for other than legitimate city purposes and within the limits of the charter. (*Hodges* v. *City of Buffalo,* 2 *Denio,* 110.) But within the range of such limits, it has a large and an unlimited discretion, as the sole legislative power and authority of the city. Here was a controversy with the plaintiffs in respect to the question whether they were liable to be assessed and taxed on $100,000 of United States securities, held by them as part of their capital. It

was a disputed and disputable question. It must be settled by agreement with the city, or by litigation. It seems to me that the common council had power to decide for the city whether it would compromise this claim or litigate it. The power to decide this question was a proper incidental power, to be exercised under the general power to control the financial affairs of the city.

By section 117 of the charter, the common council was expressly authorized in case any mistake should be made or error committed in any tax or assessment upon any property, real or personal, "to remit such assessment or the tax based thereon if uncollected, and to refund the same if collected." Under this section, the common council could have corrected the assessment in question in this action, before the tax was collected, or refunded it after made. If they could do this upon their own conviction that such assessment or tax was erroneously imposed, certainly they could stipulate to submit the question to the court without suit, or to submit, before payment or after payment, without raising any question aside from the merits. And this is what they have agreed. They have stipulated with the plaintiffs to litigate the question in dispute upon the merits without raising the question whether the prepayment of the tax should or should not be regarded as voluntary.

When the common council passed the resolution in question they knew that the plaintiffs claimed that the tax on the $100,000 of United States government securities was illegal, and proposed to contest its legality and to sue for its recovery back; and they passed this resolution in order that the city might immediately receive said tax and the plaintiffs might immediately pay the same, without affecting their rights in such litigation.

When this suit was actually commenced the common council was the only power to defend it. They were under no obligation to violate their resolution and interpose or raise the objection that such payment was voluntary. They were

Commercial Bank of Rochester *v.* City of Rochester.

not bound to defend at all. They might, if they had become satisfied of the justice of such claim, have acquiesced in it and permitted the plaintiffs to recover the amount claimed, by default. If this be so, and I think there can be no doubt of it, certainly they might say by resolution, in advance of such payment, that they would waive that particular defense that such payment was voluntary, by stipulating as they did that it should not be so regarded or treated.

But to go further; the common council being the only power to determine whether an action—this action—to recover the amount of such tax should be defended or not, it could certainly stipulate for its own action that no such defense, as that such payment was voluntary, should be interposed or made by its authority. The city attorney, by whom the defense in the suit is interposed, is the mere agent of the common council. He is appointed and removed by them, and acts under their authority and control. The resolution in this view binds the common council not to make the defense in question, or authorize or allow it to be interposed. It therefore controls, legally and lawfully, the defense of the action, and the defendants are bound by such stipulation. It merely waives a formality in the prosecution of the suit not connected with or affecting the merits of the question in dispute, and for such stipulation the defendants received a consideration in the prepayment of the tax and the use of the money pending the litigation, which was obviously of some advantage to the city, provided it should ultimately prevail in the action.

The defense or objection to the plaintiffs' claim to recover the amount of the tax alleged to have been illegally imposed, being thus interposed solely upon the authority and direction of the common council, and for which they alone are responsible, I think we should hold that the common council is the principal in making such defense, and is to be treated and regarded as though it was the corporation in fact, and

the defendant in the action, and held precluded and estopped from setting up a defense in violation of its express resolution and contract.

But if the common council can not be regarded as the virtual defendant in this action, and the city is not therefore estopped from setting up the defense that the payment in question was voluntary notwithstanding said resolution, then I think the defendant, *the city*, the body corporate, the whole body of the inhabitants, is bound by its acts as its or their agents acting in their behalf and for their benefit. As such *agents* they stipulated that if the plaintiffs would pay them the tax before the warrant issued, no such defense as that of a voluntary payment should be made. The plaintiffs paid the tax accordingly into the city treasury. The city has had the money, and received and obtained it four or five months in advance of the time when it could be legally enforced, upon the inducement and representation held out to the plaintiffs in the resolution. The city having thus received the consideration for the agreement, can not be allowed to retain the benefit acquired by its agents and disown and disavow its part of the bargain. The city has kept and retained the money that it obtained upon the faith of such resolution, and is bound by the acts of its agents, as much as any private individual. It can not keep the money and cut off the plaintiffs from the benefit which they expected to receive, and which the defendants' agents stipulated they should receive for its payment before it was legally due or collectable.

It is well settled that if a person, not duly authorized, makes a contract on behalf of a corporation, and the corporation takes and holds the benefit derived from such contract, it is estopped from denying the authority of the agent. (*The Episcopal Charitable Society* v. *The Episcopal Church*, 1 *Pick.* 372. *Hayward* v. *The Pilgrim Society*, 21 *id.* 270. *Randall* v. *Van Vechten*, 19 *John.* 60. *Foster* v. *Essex*

*Bank,* 17 *Mass. Rep.* 500.   1 *Parsons' on Cont.* 139.)   The demurrer, I think, should be overruled, and the defendants allowed to answer on the usual terms.

Judgment for the defendants, on the demurrer.

[MONROE GENERAL TERM, June 6, 1864.   *J. C. Smith, Welles,* and *E. Darwin Smith,* Justices.]