THE PEOPLE, *ex rel.* The Metropolitan Bank, *vs.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS OF THE CITY AND COUNTY OF NEW YORK.

A certiorari, to review an assessment made by the commissioners of taxes and assessments of the city and county of New York, will not lie after the assessment roll has been delivered by the commissioners to the board of supervisors, and the tax has been collected.

After the assessment roll has been delivered to the supervisors, the commissioners have no longer any control over the assessment, and can not correct or reduce it.

A certiorari will not be allowed, for the purpose of enabling a party, by procuring a reversal of the proceedings of the commissioners of taxes, to recover back, by action, money paid by him for taxes.

THE certiorari in this case was brought under section 20 of the act of April, 14, 1859, in relation to taxes and assessments in the city of New York, (*Laws of* 1859, *chap.*

302.)  The relator is a banking corporation or association, whose capital stock is $4,000,000.  It was assessed for the year 1863 on $3,672,970, as the valuation of its capital stock equal to its amount, after deducting the assessed value of its real estate and the amount of its stock held by a certain charitable institution.  The relator applied to the commissioners to have this assessment corrected and reduced, on the ground that $3,100,000 of its capital was invested in stocks, bonds and other securities of the United States, and was exempt by law from taxation by state authority.  The commissioners decided not to make, and did not make any deduction from the amount of assessed valuation.  This decision was declared within thirty days after the application, and before the first day of May, 1863.  The *certiorari* in this case was applied for and allowed on the 29th day of December, 1863.  The assessment rolls were in fact delivered by the commissioners to the board of supervisors on the first Monday of July, 1863, as required by law.  (*Act of April* 14, 1855, §§ 12, 13.)  It was conceded, if the case was decided on the merits, that under the recent decision of the supreme court of the United States the decision or proceeding of the commissioners must be reversed; but it was insisted, on the part of the respondents, that the *certiorari* should be quashed, on the ground that it was allowed too late.

*L. B. Woodruff*, for the relators.

*John E. Devlin* and *Mr. Trull*, for the respondents, the commissioners.

*By the Court*, SUTHERLAND, J.  It is perfectly plain that it would be a useless ceremony to decide this case on its merits, and reverse the decision or proceeding of the commissioners.  The tax rolls for 1863 were delivered to the board of supervisors on the first Monday of July in that

year, and it must be presumed that the tax of which the re-
lator complains has long since been paid or collected.

The points of the counsel for the relators are drawn with
extreme ingenuity. He commences by assuming that the
statute (§ 20 of the act of 1859) by virtue of which the
*certiorari* was allowed, fixes no limit to the time within
which it may be brought, and that therefore whenever brought
or presented, the relator is entitled to have the record which
it brings up reviewed and considered, and disposed of on its
merits.

If it was the intention of the legislature, by section 20 of
the statute, to give the aggrieved party a right to a *cer-
tiorari* to review and correct the decision or action of the
commissioners at any time, or any number of years after
their decision or action, and after the tax has been paid or col-
lected, why then, indeed, the court must hear and decide the
case on its merits, irrespective of the time of the application
for, or allowance of, the *certiorari,* and irrespective of the
question whether the reversal of the decision or action of the
commissioners will be of any use to the relator. The court
could not probably refuse to carry out the intention of the
legislature, on the ground that it would be useless to do so.

But it is not to be presumed that the legislature intend
to pass an idle law, or to give a valueless statutory right,
or to compel courts to render useless judgments; hence,
on the question of intention, on the question of the construc-
of § 20 of the statute, giving the right to a *certiorari,* on the
question whether the legislature did or did not intend that
the *certiorari* given by that section should be applied for,
allowed and served, before the assessment rolls were delivered
by the commissioners to the board of supervisors on the first
Monday of July, as required by section 13 of the act, the
consideration that it would be a useless ceremony to reverse
the decision or action of the commissioners in this case must
and should have great weight.

The statute gives the *certiorari* as a matter of right, and

there is indeed in express words no limitation of the right in point of time; but the question is, looking at the whole statute, and the purpose of the *certiorari*, was it not the intention of the legislature that the *certiorari* should be applied for, allowed and served before the time fixed by the statute (§ 13,) for the assessment rolls leaving the hands of the commissioners? After that, the commissioners have no longer any control over the assessment complained of, and can not correct or reduce it.

If the aggrieved party has a right to the *certiorari* after the delivery of the assessment rolls to the board of supervisors, he has a right to it twenty years after, and after he has voluntarily paid the tax, and whether he has voluntarily paid the tax, or paid it on compulsion.

Now I have said that it was plain that it would be a useless ceremony to reverse the proceeding or action of the commissioners after the assessment rolls had been delivered to the board of supervisors and the tax complained of had been paid or collected.

The counsel for the relator cites many New York cases to show that the proceeding or action of the commissioners sought to be reviewed or reversed, being judicial in its character, sustains the subsequent proceedings for the collection of the illegal tax from the relator. These cases (*Weaver* v. *Devendorf*, 3 *Denio*, 117; *Matter of Mount Morris Square*, 2 *Hill*, 14; *Vail* v. *Owen*, 19 *Barb.* 22, *and many others*) show that no action will lie against the commissioners, though the supreme court of the United States has pronounced their proceeding erroneous and the tax illegal. He also cites many Massachusetts cases, (*Boston* v. *S. Glass Co.*, 4 *Metcalf*, 181; *Dow* v. *Sudbury*, 5 *id.* 73, *and many others*,) to show that money collected on an illegal assessment can be recovered back; and he might have cited an earlier Massachusetts case, (*Amesbury W. & C. Manufacturing Co.* v. *Inhabitants of Amesbury*, 17 *Mass. R.* 461,) holding con-

trary, I think, to the whole tenor of the English cases, and of the New York cases, (see *Fleetwood* v. *The Mayor*, &c. 2 *Sandf.* 481. and the very recent case *The Commercial Bank of Rochester* v. *The City of Rochester*, 42 *Barb.* 488,) that an illegal tax voluntarily paid could be recovered back ; but he fails to cite any case to show that the formal reversal of the proceeding or action of the commissioners in this case will or can in any way the least affect the question of the relator's right to recover back the money paid or collected on the illegal assessment, or that such reversal can or will in any way authorize, aid, or affect any action or right of action for that purpose.

The Massachusetts cases show too much for the counsel's purpose; for they show that actions could be brought, and were brought and sustained, without any reversal of the action or proceedings of the assessors on *certorari* or otherwise. Indeed, no principle can be suggested, upon which our reversal of the proceeding or action of the commissioners now, can or will be of any use to the relator, in any action to recover back the money paid by it or collected of it. The counsel for the relator fails to cite any case or to suggest any principle to show that the reversal of the proceedings of the commissioners now, after the tax has been paid or collected, will remove an obstruction in the way of recovering the money back. He seems to doubt, himself, whether the reversal now would be of any importance, for the language in one of his points is : " But it may be of vital importance that the record of the judicial act which determines the value of the relator's taxable property should first be corrected." His points fail to show that the reversal or correction of the action of the commissioners now, would be of the least importance. He does not suggest, and I think no one would suggest, that such reversal would sustain or aid an action against the commissioners for a judicial error, or against any officer or collector, for collecting the tax under a warrant regular on its face.

The question whether the relator has any remedy by action against the city, or commissioners, or officer collecting the tax (if it was collected, and not voluntarily paid) is not before us, and we do not intend to express or intimate any opinion on that question ; but the question as to the uselessness of reversing the proceeding or action of the commissioners on *certiorari,* brought after the assessment rolls have been delivered to the supervisors, and after the tax complained of has been paid or collected, is before us, as having a very important bearing on the construction of the provision of the statute giving the right to the *certiorari,* for it is not to be supposed that the legislature intended to give the right to a *certiorari,* after and when it could be of no use. In the case of the *Commercial Bank of Rochester* v. *City of Rochester,* (42 *Barb.* 488,) before cited, it was not suggested either by counsel or court, that the non-reversal of the proceeding or action of the assessors on *certiorari* stood in the way of a recovery.

The words of the provision are : "A *certiorari* to review and correct on the merits any decision, &c. shall be allowed by the supreme court or any judge thereof, &c. and shall, with the return, be heard and decided forthwith by said court in preference to all other matters, actions or proceedings." The latter words of this provision tend to show, I think, that it was the intention that the *certorari* should be applied for, allowed and served, at least before the assessment rolls were delivered to the board of supervisors.

The books containing the assessed valuations are to be kept open for inspection and for applications for correction, from the second Monday of January until the first day of May in each year, (§§ 8, 9 and 10,) and the decision of the commissioners, on the application for correction, is to be declared within thirty days after the application. (§ 10.) If then the application is made on the last day of April, and the decision is declared within thirty days thereafter, the assessment rolls must remain in the hands of the commissioners

for at least thirty days after the decision ; and considering that there is a special term of the supreme court in this judicial district constantly in session, and that regularly no doubt, the *certiorari* being under the statute, could be made returnable at special term, it would appear that ordinarily there would be no difficulty in having the *certiorari* allowed, and served, and a return made, and decided within the thirty days, and before the assessment roll left the commissioners.

Moreover, the provision of the statute, (§ 10,) that no reduction shall be made by the board of supervisors, unless it shall appear, under oath, that the party aggrieved was unable to attend within the period prescribed for the correction of taxes by reason of sickness or absence, &c., certainly shows that all the corrections to be made except in case of sickness or absence were to be made by the commissioners, and certainly tends to show, also, that it was the intention that the corrections should be made before the assessment rolls were delivered to the board of supervisors.

The foregoing considerations, I think, reasonably lead to the conclusion that the legislature never intended that the *certiorari* might be applied for and allowed after the assessment rolls were delivered to the board of supervisors ; certainly not, after the tax complained of had been paid or collected.

But take another view of the question of construction.

Concede that the judicial nature of the proceeding or action of the commissioners stands in the way of any action by the relator to recover its money back, and that our reversal of such proceeding or action will enable the relator to recover its money back by action ; can it be supposed that the legislature intended to promote and encourage said litigation for such purpose, and intended to enable a party long, or any length of time, after the payment or collection of the tax, to recover back money received or collected for public use by and under its own authority ? The considerations of public policy which controlled the discretion and decisions

Shaffer *v.* Mason.

of the court in *People*, ex. rel. *Church*, v. *Supervisors of Allegany*, (15 *Wend*. 132 ;) *People*, ex. rel. *Onderdonk*, v. *Supervisors of Queens*, (1 *Hill*, 195 ;) *Fitch* v. *Commissioners of Kirkland*, (22 *Wend*. 132,) and *Mott* v. *Commissioners of Highways of Rush*, (2 *Hill*, 472,) when the common law writ of *certiorari* was applied for or allowed, apply with all their force to the question of construction in this case.

My conclusion is that the *certiorari* should be quashed, with costs.

Judgment accordingly.

[New York General Term, February 6, 1865. *Ingraham, Clerke* and *Sutherland*, Justices.]