DEWEY v. SUPERVISORS OF NIAGARA, appellants.

*Action — form of — for moneys collected under invalid· assessment — Taxes — what is involuntary payment of — payment under protest — tax paid on invalid assessment — how far recoverable — Trial — insufficient findings of fact by court.*

Moneys wrongfully collected by a municipal corporation are recoverable by action for money had and received.

Under an illegal and void assessment for the drainage of lands in Niagara county, plaintiff paid the tax collector, having a warrant for their collection, certain taxes under protest, which were paid into the county treasury. *Held,* an involuntary payment which would authorize the plaintiff to recover back the same by action against the board of supervisors of the county.

In an action to recover taxes paid under protest on a void assessment, there was evidence that they were so paid, but the judge who decided the action did .not find, as a fact, that they were paid under protest or coercion, although he directed judgment for the plaintiff. *Held,* that the judgment would be sustained under the rule that a general finding will be held to embrace every essential fact to sustain the judgment where the evidence in the case will sustain such finding, there being no finding which shows the judgment erroneous.

The tax .was upon an assessment for the drainage of lands in a town, and it was the duty (Laws 1867, chap. 774, § 8) of the board of supervisors of the county to assess the amount required upon the property benefited, and when collected, the taxes were to be paid to the county treasurer, who was directed to pay the same to certain commissioners upon their order. *Held,* that defendants were liable only for the amount in the county treasurer's hands at and after the time he received notice of the commencement of proceedings to test the validity of the assessment, and not for sums paid by him in good faith upon the orders of the commissioners before that time.

APPEAL from a judgment for plaintiff entered upon the decision of the court upon a trial without a jury. The action was brought in the county of Niagara by William W. Dewey against the board of supervisors of that county to recover money wrongfully collected by the defendant from plaintiff. The money thus collected was for an assessment imposed upon the lands of plaintiff under the provisions of chapter 774 of the Laws of 1867, for the purpose of paying the expense of a drainage improvement through the lands of plaintiff and others in the town of Royalton in said county. The assessment in question was upon an appeal in proceedings by certiorari instituted in behalf of plaintiff and others against the

commissioners appointed under said act and the defendant (*People ex rel. Williams* v. *Haines*, 49 N. Y. 587) decided void. Upon the trial evidence was given to show that at the time the tax in question was collected from plaintiff he protested against paying it, but no specific finding that he did so protest was made by the judge before whom the action was tried. No levy was made upon plaintiff's property under or by virtue of the tax warrant.

By section 1 of the act mentioned (Laws 1867, chap. 774) commissioners are appointed to manage the matter of draining the lands for the benefit of which the act was passed. By section 8 of such act it is provided that the assessment for the expenses of such drainage "shall be levied and collected and paid over to the treasurer of the county of Niagara in the same manner as county taxes are levied, collected and paid over," and "the said moneys, when collected, shall be paid over by said treasurer to the said commissioners, upon their vouchers for the same."

The proceedings by certiorari to review the action of the commissioners and determine the validity of the assessment were commenced in March, 1868. At the time the writ was served on defendant, all but $205.15 of the moneys collected had been paid by the county treasurer to the commissioners, in accordance with the provisions of the statute. The amount of drainage tax collected of plaintiff was $455.72. After the service of the writ the county treasurer paid all or most of the balance in his hands to the commissioners upon orders from them.

Other facts material to the case sufficiently appear in the opinion.

*George C. Greene,* for appellant, cited *Union Bank of N. Y.* v. *Mayor of N. Y.,* 51 Barb. 159, 182; *N. Y. & H. R. R. Co.* v. *Marsh,* 12 N. Y. 308; *Silliman* v. *Wing,* 7 Hill, 159; *Supervisors of Onondaga* v. *Briggs,* 2 Den. 26; *Bank of Commonwealth* v. *Mayor of N. Y.,* 43 N. Y. 184, 188; *Swift* v. *City of Poughkeepsie,* 37 id. 511.

*John Ganson,* for respondent.

E. DARWIN SMITH, J. Confessedly, according to the decision of the court of appeals in the case of *People ex rel. Williams* v. *Haines,* 49 N. Y. 587, the money collected and received by the defendants upon the estimate and assessment made by the said com-

missioners, appointed by act of the legislature of 1867 for draining certain lands in Niagara county (chapter 774), were exacted and received without right and upon an illegal and void assessment. Moneys so collected by municipal corporations and paid into the treasury of the city or county, are recoverable by action for money had and received, as held recently in the cases of *National Bank of Chemung* v. *City of Elmira*, 53 N. Y. 49, and *Newman* v. *Supervisors of Livingston*, 45 id. 676, and in other cases.

The point chiefly urged upon the appeal by the defendant's counsel for the reversal of the judgment in this case is, that the plaintiff paid said drainage taxes *voluntarily*, with full knowledge of the facts.

In the opinion of the learned judge who tried this cause at the circuit, no such point is discussed, and I presume it was not taken at the trial, as in the findings it is not found or stated as matter of fact that the moneys were not paid by the said plaintiff to the collector freely and voluntarily, and without any seizure of goods or duress of property, or threatened seizure, or that it was paid or procured by any mistake or fraud.

Moneys paid upon a tax or assessment made under color of law, and of lawful authority, and while such assessment remained or was deemed valid, cannot be recovered simply on the ground that such tax should happen to be subsequently held invalid and set aside, or the proceedings upon which it was based reversed. *Com. Bank of Roch.* v. *City of Rochester*, 42 Barb. 488, affirmed in the court of appeals at September term, 1869; *Union Bank of N. Y.* v. *Mayor of N. Y.*, 51 id. 159; *N. Y. & H. R. R. Co.* v. *Marsh*, 12 N. Y. 310.

While the doctrine that money voluntarily paid in the absence of fraud or mistake, and with full knowledge of the facts, cannot be recovered is well settled, it is not quite so clear what shall constitute an involuntary payment in such a sense that the money may be recovered. In respect to all personal contracts or claims between individuals the rule, I think, is well settled that there must be a seizure or duress of the person or goods to constitute such an involuntary payment. *Harmony* v. *Bingham*, 12 N. Y. 116; *Silliman* v. *Wing*, 7 Hill, 159; *Supervisors of Onondaga* v. *Briggs*, 2 Den. 39; *Com. Bank of Roch.* v. *City of Rochester*, 41 Barb. 342.

But, as between the public and individuals, or between public corporations or public authorities and individuals, the rule is not

so held universally. In *Newman* v. *Supervisors of Livingston*, *supra*, the tax was levied upon the plaintiff's personal property by the collector, under his warrant, and the same was sold and the tax thus paid. In the case of *National Bank of Chemung* v. *City of Elmira*, *supra*, the collector under his warrant levied upon a quantity of bank bills belonging to the plaintiff, and sold them for the amount of the tax. These were unqualified cases of involuntary payment.

But in the case of *Bank of Commonwealth* v. *Mayor of N. Y.*, 43 N. Y. 184, it does not appear that any levy was made, but the warrant was issued for its collection and the said tax was paid to the collector, as the complaint stated, and which the plaintiff offered to prove on the trial, by menace and compulsion. Judge GROVER refers to this allegation of the complaint, and says that "the plaintiff was legally bound to pay, and had no lawful mode of resisting such payment;" that the assessment, until reversed, "had the force of a judgment requiring the plaintiff to pay the tax as required by the statute," and held in effect that the plaintiff was not bound to resist the officer, but had a right to pay without affecting their right to recover back the amount paid, should the tax thereafter be determined to be illegal by a reversal of the assessment.

In the case of *Preston* v. *Boston*, 12 Pick. 14, Chief Justice SHAW said, "that where a warrant to a collector is issued to collect a tax, and a party not liable to taxation is called peremptorily to pay upon such warrant, he may give notice that he pays under protest, and pay and recover the money as money had and received and not paid voluntarily." This was substantially what was done by the plaintiff in this case, as the evidence shows.

It is true that in the finding of facts the judge does not expressly find that the plaintiff paid the tax under protest or coercion. Yet I think we must hold the finding sufficient to sustain the judgment, under the rule quite generally asserted and followed in the court of appeals and in this court in reviewing judgments rendered by referees or single judges that a general finding will be held to embrace every essential fact to sustain a judgment where the evidence in the case will fully warrant such finding and the parties seeking to reverse such judgment have failed to procure from the judge or referee any finding that shows the judgment to be erroneous. *Meacham* v. *Burke*, 54 N. Y. 219; *Viele* v. *T. & B. R. R. Co.*, 20 id. 184; *Grant* v. *Morse*, 22 id. 323.

The payment of the tax to the collectors was not, therefore, such a voluntary payment as to preclude the plaintiff from a recovery on that ground. The tax was levied, demanded and collected under the authority of the defendants, in the execution on their part of the act under which the drainage and improvement in question was authorized (chap. 774, Laws 1867), and in conformity with the provisions of the eighth section of said act. They received the plaintiff's money from the town collectors, and the same was deposited and mingled with the general money of the county by the county treasurer. The proceedings of the commissioners under the act aforesaid in making the assessment upon which said tax was based, and all their proceedings having been set aside by the court of appeals as void for want of jurisdiction, it follows that the defendants have obtained and received the plaintiff's money without right, and are liable to refund the same within the decision of the said court in these several cases above cited and other cases, unless upon some other point they have a defense to such claim.

This brings me to the only question remaining, which is whether the payment of the moneys by the defendants to the drainage commissioners upon their order, before the notice of claim or commencement of suit by the plaintiffs, constitutes such a defense. There can be no question, I think, that the moneys collected by the defendants and paid over to such commissioners after the service of the writ of certiorari, brought by the plaintiff and others to review and reverse the proceedings of said commissioners, and while the proceedings under the writ were pending and undetermined, were paid at their peril and in their own wrong, and they are clearly liable for such moneys.

It is stated, as admitted in the case, that the writ of certiorari directed to the defendants was served on them on the 30th of March, 1868. This writ was doubtless obtained ex parte. The order for its allowance was granted March 24, and does not recite that any one appeared for the defendants, or show, on its face, that any notice of motion had been served for the application for such writ. Before this time the taxes levied in the year 1867 under the tax roll of that year had been collected and paid to the county treasurer of said county and most of the money paid out upon orders of the said commissioners. From the testimony of the clerk of the county treasurer, it appears that all the moneys so collected under the warrant and assessment for 1867, except the sum of $205.15, had been so paid out by such county treasurer before the

allowance and service of said writ of certiorari. And it does not appear that the defendants had any notice forbidding them to pay over such moneys, or of any pending or contemplated legal proceedings to review said assessment or test its legality, or for the recovery of the money collected from the plaintiff in this action or any other of the persons assessed for said improvement before the service of such writ of certiorari.

Whether the defendants are liable in this action for moneys so paid over in good faith to the said drainage commissioners to defray the expense of a local improvement in one of the towns of said county in which the county at large had no interest, and the defendants were the mere agents of the parties interested in such improvement, designated by the legislature to collect such moneys by the ordinary machinery for the assessment and collection of county and town taxes, and where they, the said supervisors, had themselves been guilty of no fault and had not committed any judicial error, and had no power to review or correct the judicial conduct or decisions of the commissioners intrusted with the work of constructing said improvement and estimating the expense of the same, and making an assessment upon the persons benefited thereby, remains to be considered.

I am not prepared to admit or to decide that the defendants are liable for money so paid out. The question has not, I think, been decided in any of the cases in this State. In *Necoman* v. *Supervisors of Livingston, supra,* the moneys were collected for county and town taxes and paid into the county treasury for such purpose. In the case of *Bank of Commonwealth* v. *Mayor of New York,* the money was collected by the city receiver of taxes for county and city taxes, and it was held that the city was only liable for the moneys paid into the city treasury.

In the case of *Bank of Chemung* v. *City of Elmira,* the moneys collected were upon the ordinary rolls for the city and county taxes, and the city was held liable only for the amount paid into the city treasury.

In the case of *Chapman* v. *City of Brooklyn,* the money had been paid upon the sale of a city lot for a local assessment and the money paid into the city treasury. There was a mistake about the lot sold, it being assessed to a wrong person. The city could give no title to it, and had no authority to sell the lot. The recovery was sustainable and the decision right upon several grounds, and it did

not appear that the money had been paid over to the contractors. The court differed in opinion as to the grounds of the decision, but the case does not assert or hold the doctrine that money assessed or collected by a municipal corporation for a local improvement and paid over in good faith before notice of claim to it or notice not to pay same, or of any *lis pendens* existing in respect to the validity of the assessment can be recovered back from said corporation. In that case it appears that the city, if compelled to refund the money, had still the power to make a new assessment and correct the error of the former assessment.

In this case no such power exists on the part of the defendant, and if the money is recovered it is lost to the county at large unless, upon application to the legislature, the commissioners, by an enabling act, shall be authorized to make a new assessment and rectify the errors committed by them in proceeding to construct said ditches before they had procured the requisite title from the proprietors of the land required for that purpose.

The principle upon which the recovery was had in all the foregoing cases is well stated by Judge GROVER in the case of *Bank of Commonwealth* v. *Mayor of New York, supra*. The action, he said, "is to recover money in the hands of the defendant which does not belong to it but to the plaintiff, which was paid by the plaintiff upon an erroneous judgment." In that case the tax, $3,729.73, was paid to the city officers and by them paid in to the city treasurer. Judge GROVER says, in respect to it: "When the entire tax was paid to the chamberlain he must be regarded as receiving that portion imposed for the defendant as its treasurer and the balance as county treasurer. For the latter the defendant cannot be held responsible, as the money cannot be regarded as ever received by it." This tax was collected upon the warrant and authority of the city, but it was only held liable for the money received for the use of the city, and applied to city purposes.

The case of *Chapman* v. *City of Brooklyn* is simply authority for the proposition, as Judge GROVER states it, that an action will lie against a municipal corporation for the recovery of money *in its hands* to which it has no right, but which belongs to another.

The right to recover money collected or received upon an erroneous judgment exists from the moment it is reversed as against the party receiving the money and appropriating it to his own use. The action lies for money had and received without consideration

under the form of law, but it lies only against the party benefited by the money — the plaintiff in the execution.

A sheriff who had collected the money on execution, and paid it over to the plaintiff, would not be liable to an action to refund the same. *Bank of U. S.* v. *Bank of Washington,* 6 Pet. 8; *Chegary* v. *Jenkins,* 5 N. Y. 376.

The county of Niagara has received no benefit from the plaintiff's money. It was not received for the use of the county. The defendants were mere agents of the plaintiff and the other land owners interested in the said improvement to collect and pay over the said money for their benefit.

It appears from the findings of the judge, and the evidence, that the county treasurer received from the collector the sum of $453.72, which was collected from the plaintiff, and this money was anticipated and paid out upon orders of the drainage commissioners before the service of the certiorari, except the sum of $205.15. This money being in the hands of the defendants when the writ of certiorari was served upon them, should have been retained by them to meet the claims of the plaintiffs and others, if any other of the persons assessed for said work should establish a claim to have the money paid by them refunded. The service of such writ was a virtual and sufficient demand for the repayment of such money.

It does not appear that any other of such persons paid their tax under protest.

I do not see, therefore, why the plaintiff is not entitled to recover the money thus remaining from said tax of 1867 in the hands of the defendant, county treasurer at the time of the service of said writ of certiorari.

The difference between this amount and the whole amount of the tax of 1867 is $250.57. This sum, with interest thereon from February 5, 1868, the time when said money was paid to the collector, which is the time from which the interest included in the judgment was computed, according to the finding of the judge, should be deducted from the judgment and it should be affirmed for the balance.

*Judgment accordingly.*