HON. CHARLES W. WHIPPLE, &#125;
HON. WARNER WING,        &#125;JUSTICES.
HON. GEORGE MILES,       &#125;

---

MEMORANDUM.—The HON. EPAPHRODITUS RAMSOM, Chief Justice, did not participate in any of the decisions of this term, having been absent, during most of the time, on account of illness.

In October, 1846, the Hon. DANIEL GOODWIN, Associate Justice of this court, having resigned, the HON. GEORGE MILES was appointed to fill the vacancy, and to hold the Circuit Courts in the Second Circuit; and the HON. WARNER WING, was, at the same time, transferred to the First Circuit.

---

## GORDON v. FARRAR AND OTHERS, INSPECTORS OF ELECTION, &c.

Whether a person offering to vote at an election, has the requiste qualification as to color or descent, (the Constitution, Art. II. § 1, conferring the right to vote, upon "*white* male citizens" only,) must, on challenge for the want of such qualification, be inquired into and determined by the inspectors of election.

In determining this question, the inspectors act *judicially*, not ministerially; and therefore they are not liable in an action on the case for damages, for improperly refusing a vote because the person offering it was partly of African descent.

CASE reserved from Wayne Circuit Court. This was a special action on the case, brought by Gordon against

Farrer and others, inspectors of election for the Second Ward, in the city of Detroit, for refusing to receive the plaintiffs vote, at an election for the purpose of choosing a representative in congress for the first congressional district of Michigan, and certain other officers, held Nov. 4, 1844.—Plea not guilty.

The cause was tried at the November term 1845, of the circuit court, before the Hon. D. Goodwin Presiding Judge. At the trial, the jury returned the following special verdict:

" The jury empanneled in this cause find for the plaintiff, and assess his damages at 12½ cents; subject to the opinion of the court upon the following state of facts, viz:   The plaintiff is partly of Saxon and partly of African descent; but the Saxon blood in him greatly predominates over the African.   He is of a complexion as white as, or whiter than many persons decended from European nations; but there is a mixture of African blood in his composition, though he has less than one half.   The plaintiff offered his vote to the defendants, sitting as inspectors of election, which was refused.   He then offered to take the oath required by the statute, which was also refused. If the court, on such a state of facts, are of the opinion that the plaintiff, possessing all the other qualifications of a voter under the laws of Michigan, is entitled to vote, or to be sworn according to the statute as an elector of the state of Michigan, then the verdict above given is to stand; otherwise the jury find for the defendant."

The Presiding Judge reserved the question as to what judgment should be rendered upon this verdict, for the opinion of this court.

*E. C. Walker*, for the plaintiff.

*W. A. Howard*, for the defendants.

MILES, J. delivered the opinion of the court.

The qualifications of electors in this state are fixed by the constitution. Art. II. § 1, as amended in 1839, provides that, " In all elections, every *white male citizen*, above the age of twenty-one years, having resided in the state six months next preceeding any election, shall be entitled to vote at such election ; and every white male inhabitant who may be a resident of this state at the time of the signing of the constitution, shall have the right of voting as aforesaid ; but no such citizen or inhabitant shall be entitled to vote, except in the township or ward in which he shall actually reside at the time of such election."

The only statutory provisions in relation to challenges of electors, and the duty of inspectors of elections when an elector shall be challenged as unqualified, are contained in the act passed in 1841, entitled " An act to preserve the purity of elections," &c.    S. L. 1841, p. 185. Sec. 1. provides that one of the inspectors shall tender to every challenged person, an oath that he will faithfully and truly answer all such questions as shall be put to him *touching his qualification as an elector*, " and the inspectors, or one of them, shall then proceed to question the person challenged in relation to his age; his then place of res - idence; how long he has resided in the state; whether he was an inhabitant of this state on the 24th day of June, A. D. 1835, and whether a native or naturalized citizen ; and if the latter, when, where, and in what court, or before what officer, he was naturalized ; whether he came into the town or ward for the purpose of voting at that election ; how long he contemplates residing in the town or ward ; and all such other questions as may test his qualifictions *as a resident of the town or ward, his citizenship, and his right to vote at that poll.*"*

---

*This statute was repealed by R. S. 1846, (p. 725, 730) which contains other and somewhat different provisions on the same subject.  See Ch. 5, p. 43.

It will readily be perceived that in all this, no provision is made for testing the qualification of the elector, as to his color, or descent. The enquiry is, by the statute, to be confined to the qualifications enumerated, and in which this is not included ; and we are not aware that any provision is made by law, for the mode of determining whether a person who offers a vote at an election is possessed of this qualification. The duties of the inspectors upon a challenge as to any other qualification are clearly pointed out. They are required to administer the preliminary oath, and make the specified enquiries, and if the party answers them fully, no matter what may be the character of the responses, they are, if he still persists, required to administer another oath, that he possesses the qualifications named in the statute, and if he will take such oath they must receive his vote.

But it is only *white* male citizens who are entitled to vote ; and when a question arises whether an elector possesses this qualification, to whom must it be submitted ? We know of no other tribunal than the inspectors of the election.

If a colored person should offer his vote, and be challenged for that cause, although the inspectors are not authorized by statute to institute an examination of the party under oath, as in case of other alledged disqualifications, still it would not be competent for them to receive the vote without determining, in some way, by inspection or otherwise, whether he came within the description of persons in this respect qualified. That would be a direct and palpable violation of their duty, resulting from the nature of their office, and the requirements of the constitution.

It is true the evidence proper to be introduced, or whether any evidence is competent for that purpose, is no where prescribed or fixed by law ; still, in our judg-

ment, defective and deficient as the law is, the question must be decided by the inspectors, when the vote is offered.

If we are correct thus far, (and so far we are sustained by plaintiff's counsel, who insists the defendants are liable for rejecting the plaintiff's vote on the sole ground that he was not a white person within the meaning of the constitution, thereby conceding to them the right to determine the question,) then the next enquiry is, are the defendants liable in this action ?

The plaintiff relies upon the point that, under the statute, the act complained of was not a judicial, but a ministerial act.   In this we think he is mistaken.   The statute has nothing to do in the matter.   The only enquiries under the statute are such as we have enumerated ; but before the oath can be administered, or the enquiries made, the other more important enquiry is to be answered, " Is this person white ?"   He is not by the statute permitted to establish the affirmative of this by his own oath, as he can his other qualifications, and thus compel the inspectors to receive his vote, leaving them no discretion, no opportunity for the exercise of their judgment, in the matter.   Conceding, then, as the plaintff in this case does, to the inspectors, the right to adjudicate upon this enquiry, and requiring them to· do so, and relying, as he does, upon the facts found by the special verdict as showing the plaintiff to possess the necessary white qualification, we cannot come to any other conclusion, than that the inspectors, in passing upon those facts and determining the plaintiff's right in this respect, acted judicially.

This brings us to the question of judicial responsibility.

" The doctrine which holds a judge exempt from a civil suit or indictment for any act done or omitted to be done by him as a judge, has a deep root in the common law." Per *Kent*, Ch. J. in 5 John R. 291.   " Courts of special

and limited jurisdiction, while acting within the line of their authority, are protected as to errors of judgment." *Cunningham* v. *Bucklin*, 8 Cow. 183. In the case of *Vanderheyden* v. *Young*, 11 John. R. 159, which was an action of trespass against the members of a court martial for imprisoning the plaintiff, *Spencer*, J., in concluding the opinion delivered, says, it would be most mischievous and pernicious to subject men acting in a judicial capacity to actions, when their conduct is fair and impartial, when they are uninfluenced by any corrupt or improper motives, for a mere mistake in judgment.

Authorities might be multiplied upon this subject, but it cannot be necessary to cite cases to sustain a proposition so well etablished.

In this view of the case, it is unnecessary to examine the cases referred to by plaintiff's counsel, to show that an action could be maintained against the inspectors of an election, acting ministerially, and without malice, for rejecting a lawful vote, as we put the judgment of this court upon the distinct ground that the inspectors, in determining the plaintiff's qualification to vote as a white person, acted judicially, and are therefore not liable to this action.

*Ordered certified that the Circuit Court should render judgment for the defendants.*