WILLIAM E. WALKER, VS. ABEL A. BROCKWAY AND GEORGE R. STARK.

BOARDS of Registration, in the discharge of their official duties act judicially, and are not to be held liable in an action for damages, for error of judgment.

A person having one-eighth Indian blood, one-fourth, or three-eighths African, and the rest White, is not, in Michigan, an elector and entitled to vote.

The Constitutional provision entitling "civilized male inhabitants of Indian descent" to vote means that no person shall be deprived of the privilege of voting, *because* of his being of Indian descent; and was not intended to make Indian blood of greater avail, as a qualification for voting, than White, when mixed with African.

*November Term*, 1869, *of the Circuit Court for the County of Saginaw.*

The facts in this case may be briefly stated as follows: On the 31st day of October, 1868, the defendants, while sitting and acting as a Board of Registration, at the Dunbar Hotel, in the Third Ward of the City of Saginaw, were applied to by the plaintiff to register his name. The plaintiff claimed the right to register as "an American citizen of Indian descent," and was sworn and testified as to his ancestry. The evidence disclosed the fact that the applicant for registration had, at *least*, one-fourth negro blood in his veins, and *not more* than one-eighth Indian.

On the Tuesday following the meeting of the Board of Registration, the plaintiff presented himself at the usual voting place in the Third Ward—that being the day of the general election—and offered to the inspectors of election, two of whom are the defendants in this case, his ballot, asserting his right to vote as "an American citizen of Indian descent," but his vote was refused, and this action is brought to recover damages on account of such refusal.

Authorities cited — 2 *Mass.*, 236; 12 *Pick.*, 485; 11 *Ohio*, 374; 2 *Doug.*, 411; 1 *Denio*, 537; 3 *Denio*, 117; 19 *Barb.*, 22; 21 *Barb.*, 207; 24 *Barb.*, 419.

*Wm. E. Walker*, in person, *W. H. Sweet* of Counsel.

*Gaylord & Hanchett, John Moore* and *J. Brosseau* for Defendant.

14

WILLIAM E. WALKER *v.* ABEL A. BROCKWAY AND GEO. R. STARK.

*By the Court,* BROWN, J. — The constitution of this State, article 7, section 1, declares that " every civilized male inhabitant of Indian descent, a native of the United States and not a member of any tribe, shall be an elector and entitled to vote."

The plaintiff does not claim that he is entitled to vote on the ground that he is a white person, but it is admitted that his legal right—if he has any such right—to vote, rests on the provision of the constitution referred to, to wit: on the ground that he is an " American citizen of Indian descent."

Before proceeding to discuss the plaintiff's right under the constitution to vote, we will examine the questions presented by the counsel for the defendants.

1st, Were the defendants, while sitting as a Board of Registration, acting in a judicial capacity; or, rather, were their official acts judicial in their nature; and,

2d If judicial, are they liable in an action for damages for an error of judgment , or even improper and corrupt conduct.

On the part of the plaintiff, the attention of the Court has been directed to Art. 6, Sec. 1, of our State constitution, which provides that " the judicial power is vested in one supreme court, in circuit courts, in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the legislature in cities."

From this it is argued that the legislature cannot vest in any court, person or persons, *judicial power* beyond the provisions of this article, and that if the law of 1859, creating a Board of Registration is to be construed as conferring upon said Board judicial power, it is in violation of the provisions of the Constitution just quoted, and therefore void.

If, then, it should appear that the Registration Board act judicially in determining the qualifications of electors, the plaintiff insists that the law of 1859 would be void. If void, it confers no power whatever on the persons assuming to act as a Board; and it would logically follow, that having no power to act, they could not be held responsible for *declining* to act. Their responsibility would, in such case, be no greater than the responsibility of any other person to whom application might be made for registration.

WILLIAM E. WALKER *v.* ABEL A. BROCKWAY AND GEO. R. STARK.

But it is contended that the Board acts not in a judicial capacity, but, in the language of the plaintiff, "not strictly, *perhaps, executive, but executive and ministerially combined*"

The attention of the Court has been directed to the constitutional provision that the "powers of the State Government are divided into three departments : the legislative, executive and judicial;" and to the further provision that no person belonging to one department shall exercise the powers that properly belong to another, except in cases expressly provided in the Constitution; from which it is argued that the judicial cannot be united with the executive power, or with the executive and ministerial. It is claimed that it is the duty of the Board of Registration to administer, not to expound, interpret, or explain the law.

In determining whether a person acts in a judicial or ministerial character, it is important to determine the nature of the acts to be performed. The law of 1859 prescribes the duties of the Board of Registration. It enacts that such Board, "at every session, shall have power, and it shall be their duty, to question every person presenting himself for registration, touching not only his residence, but his *other qualifications as a voter* These *other* qualifications are prescribed by law.

. The case of *Gordon vs. Farrar et al.*, 2 *Douglass*, 411, was an action brought against the defendants, who were Inspectors of Election for the Second ward of the city of Detroit, for refusing to receive the plaintiff's vote at an election for the purpose of choosing a Representative in Congress, held November 4, 1844.

Art. 2, Sec. 1, of the Constitution as amended in 1839, and which was in force in 1844, provided that "every white male inhabitant above the age of twenty-one years, having resided in the State six months next preceding any election, shall be entitled to vote at such election; 'and every white male inhabitant who may be a resident of this State at the time of the signing of the Constitution shall have the right of voting as aforesaid," &c.

The statute then in force entitled "An Act to preserve the purity of elections" made it the duty of the Inspectors, whenever a person should be challenged as unqualified, to tender to such person an oath, and thereupon to put certain questions specified

in the Act, " and all such other questions as may test his qualifications as a resident of the town or ward, his citizenship, and his right to vote at that poll."

Where a person is permitted to establish his qualifications by his own oath, by answers to certain questions prescribed by the statute, the Inspectors would be compelled to receive his vote, leaving them, in such case, no discretion—no opportunity for the exercise of their judgment in the matter. It may be well said that as to those questions the Inspectors would not be acting judicially, simply because they exercise no discretion, no *judgment*, but are bound by the answers of the person challenged.

It was said, in the case referred to, that the plaintiff was not permitted to establish the fact that he was a white person by his own oath, and thus compel the Inspectors to receive his vote, and that in passing upon that question the Inspectors acted judicially.

The Court then proceeded to decide the case on the ground that the Inspectors cannot be held liable for an error in judgment.

In the case of *The People ex rel. of Dean vs. The Board of Registration of Nankin*, 15 *Mich.*, 158, the Court says: "It was the duty of the respondents, when the relator offered to be sworn to his qualifications, to examine him on oath; *and while they would not be absolutely bound by his statements, they had no right to reject him on mere inspection.*" If, then, the Board is not bound by the statements of the relator, but is permitted to weigh testimony, and adjudicate upon it, it seems clear that it acts in a judicial capacity, and the 13th section of the Registry Act but confirms this view.

Whether the Legislature had the power to make provision for a Registration Board with power to act judicially I do not deem it necessary for the purpose of this case to determine; but as the question has been raised, it may be well to suggest whether the constitutional provision respecting "judicial powers" does not refer exclusively to the *judicial powers of courts ;* in other words, whether it does not mean that all such judicial power as must from the nature of the case, be exercised by a court, shall be vested in one Supreme Court, in Circuit Courts,

WILLIAM E. WALKER v. ABEL A. BROCKWAY AND GEO. R. STARK.

in Probate Courts, and in Justices of the Peace, and in such municipal courts as may be established by the Legislature in cities. In the case of *Daniels vs. The People*, 6 *Mich.*, 388, Judge Campbell, in delivering the opinion of the Court, says: " By the judicial power of courts is generally understood the power to hear and determine controversies between adverse parties and questions in litigation." Referring to Story on Const., §1640, *et seq.*: " Although the whole judicial power of the United States is vested in the Federal courts, the power to take examinations and hold to bail has always been vested in certain officers who are not Judges of those courts. It was held in *ex parte, Gist*, 26 *Ala*, 156, that this delegation was lawful, for the reason that it did not bestow 'judicial power' *within the meaning of the Constitution.*"

The case of *Kilham vs. Ward et al.*, 2 *Mass.*, 236, it will be seen by a careful examination, does not in any way decide the question involved in this case. That was a motion for a new trial, predicated upon two grounds:

" 1. Because the Judge charged the jury that in his opinion Kilham, on all the facts, by the law of the land, was not an alien and had a right to vote."

2. The Judge stated to the jury that an Act passed April 13, 1799, providing for confiscation of the estates of certain persons commonly called " absentees," ought not to avail against Kilham, because it was not proved on the trial that he was at any time prosecuted and convicted upon said Act for any crime or offense by him committed against the same.

The questions thus presented were the only ones before the Court. It is true that Story, in the concluding part of his argument in support of the motion, contended that a mere error in judgment in a case of this nature, however painful to a party, is not actionable, referring to several well considered cases in support of this claim.

Counsel in opposition to the motion confined themselves, as appears by their brief, strictly to the points presented by the motion as it appeared upon the record.

Opinions in the case were delivered by Judges Parker, Sewall, and Sedgwick, and neither of them, so far as I have been

able to discover, considered the question raised by Story, but passed only upon the questions presented by the record. I have been thus particular in referring to this case as in several subsequent cases reference is made to this case as authority upon the question at issue.

The next case referred to is *Capen vs. Foster et al.*, 12 *Pick.*, 485. In that case the learned Judge, in delivering the opinion of the Court, says: "It has been regarded as a question of doubt and difficulty whether, upon strict principle, a public officer who acts honestly and according to the best of his judgment in the discharge of his duty, and who, through such honest mistake and error of judgment, denies to the citizen his right of 'voting, should be answerable in an action for damages. But considering the utility of having a plain and perfect remedy in a case of so much importance, and the difficulty there would be in trying questions of this sort to judicial determinations were not each individual citizen permitted to vindicate his own particular right as a voter before a competent judicial tribunal, and considering that the question of damages will always be in the hands of a jury, who will take care to give slight damages, when the object is principally to settle a really disputed and doubtful right, and when municipal officers have acted honestly and in good faith, it has been decided, upon great considerations of public policy, that such an action may be sustained."

In the case of *Jeffries vs. Ankeny et al.*, 11 *Ohio*, 374, the Court, by Lane, C. J., says: "It is generally true that no suit lies against an officer for a mistake in the exercise of his judicial discretion; but when we reflect how highly the privilege of voting is generally valued, and that the Legislature has provided, and the forms of law admit, no other remedy than this action, we unite in the opinion that a *necessity* exists for entertaining this action."

It is to be regretted that the learned Judges of the Supreme Courts of Ohio and Massachusetts found it necessary, in deciding the cases referred to, to justify themselves, under the plea of necessity, "in entertaining an action where, upon strict principle," it is admitted the action could not be entertained.

I think the law as laid down in 2 *Doug.*, 411, 1 *Denio*, 537; 3

WILLIAM E. WALKER v. ABEL A. BROCKWAY AND GEO. R. STARK.

*Denio*, 117, 19 *Barb.*, 22; 21 *Barb*, 207, and 24 *Barb.*, 419, and a long list of well considered English cases, is in accordance with sound principles and should be adhered to, namely, that a person acting in a judicial character should not be held liable, pecuniarily, for an error of judgment.

In this case there is no evidence of corruption on the part of the Board, and acting in good faith, as the Court is bound to presume, in the absence of proof to the contrary, they are not responsible for refusing to register the plaintiff, and not being registered, he had no right to vote His qualification having been passed upon by the Board of Registration, the Inspectors of Election were justified in refusing to receive his vote.

These considerations would be sufficient to determine the case, but as the plaintiff desires an opinion as to his right to be registered—an opinion as to his legal qualifications as an elector—I will state briefly my views upon the question.

In the case of *The People vs. Dean*, 14 *Mich.*, 406, our Supreme Court held that " all persons in whom white blood so far preponderates that they have less than one-fourth of African blood are within the meaning of that clause of the Constitution of Michigan which limits the elective franchise to ' white male citizens;' and no other persons of African descent can be so regarded."

In that case the Court holds that " the cardinal rule of construction concerning language is to apply to it that meaning which it would naturally convey to the popular mind, in all cases where the propriety of such construction is not negatived by some settled rule of law. In all instruments which are submitted for confirmation to the people themselves, and which derive all their validity from a popular vote, such a construction is peculiarly necessary; for otherwise they would be defrauded of the right to frame their own government according to their own will."

Now, what was the clearly expressed will of the people in the adoption of the constitutional provision relative to electors ? Let us apply one more rule of interpretation. It is proper in the construction of an instrument, if possible, to give effect to the whole instrument, so that each part shall harmonize and be

consistent with every other. Now, apply this rule to Sec. 1 of Art. 7 ot the Constitution of Michigan : "In all elections every *white male citizen*—every *white male inhabitant* residing in the State," &c. What did the people mean by using the word "white?" Let the Supreme Court answer: it was to preclude persons from voting who had even one-fourth African blood in their veins; in other words, they are not to vote unless they have less than one-fourth negro blood. But what farther? "Every civilized male inhabitant of Indian descent, a native of the United States and not a member of any tribe, shall be an elector and entitled to vote." What did the people mean by this? Clearly this, and nothing more: no person shall be deprived of the privileges of the elective franchise *because* of any Indian blood he may have in his veins; and that the Legislature may never deprive such persons of the rights of an elector, we will incorporate the prohibition into the fundamental law of the State.

Now apply the test. Reconcile the different parts of the section referred to and what is the result? The people have declared,

1. White men shall be deemed electors and permitted to vote.

2. According to the interpretation of our Supreme Court, no person, if he have one-fourth or more of African blood, shall be permitted to vote. And

3. Persons shall not be denied the privilege of voting because of the Indian blood they may have in their veins.

The conclusion of the Court, then, is that the Board acted in a judicial capacity in passing upon the right of the plaintiff to vote, and is not liable in this form of action; and that the plaintiff, by his own showing, is not entitled, under the provisions of the Constitution of Michigan, to vote. Judgment must be entered in accordance with this finding.