WEAVER *vs.* DEVENDORF and others.

The duty of assessors in determining the value of taxable property, (where such value is not sworn to as authorized by law,) is in its nature judicial.

A *certiorari* lies at common law to remove an assessment. *Per* BEARDSLEY, J.

But as the allowance of the writ is discretionary, it is generally refused on grounds of public policy and convenience. *Per* BEARDSLEY, J.

A public officer is not responsible in a civil suit for a judicial determination in a matter over which he had jurisdiction, however erroneous it may be, or however malicious the motive which produced it.

Accordingly, *held* that an action could not be maintained against the assessor of a town for refusing to give the plaintiff, who was a taxable inhabitant, the benefit of the exemption allowed by law on account of his being a minister of the gospel, or for assessing his property at a higher rate than that at which they assessed the property of other inhabitants, though the conduct of the defendants was alleged to be wilful and corrupt.

ERROR to the Herkimer C. P. Weaver sued Devendorf and two others before a justice of the peace and declared against them in case, for that being assessors of the town of Frankfort for the year 1843, they assessed the plaintiff's taxable property at $1800, and in so doing refused to allow him the benefit of the exemption to which he was entitled as a minister of the gospel; that they estimated his property at a higher rate than that of other taxable inhabitants of the town, and refused to make a deduction from his personal property for debts owing by him though he proved to their satisfaction that he owed such debts, by means of which he was taxed and obliged to pay a large amount, &c. In some of the counts the defendants' conduct was charged to have been wilful and corrupt, and in others care-less and negligent. The defendants pleaded the general issue,

and the justice after a trial before him, rendered judgment for the plaintiff, which the common pleas reversed on *certiorari.* The plaintiff brought error to this court.   The evidence, so far as it is material to the questions of law, is sufficiently referred to in the opinion of the court.

*G. B. Judd*, for the plaintiff in error.

*E. T. Marsh*, for the defendants in error.

*By the Court*, BEARDSLEY, J.   Although the plaintiff may have been a minister of the gospel, still his estate, beyond fifteen hundred dollars in value, was equally subject to taxation with that of other persons.   (1 *R. S.* 387, 388, §§ 1, 4, 5.)   It is not suggested that his property was short of that amount, so that he was wholly exempt from taxation, and upon the evidence that could not be urged with a show of plausibility; we need not, therefore, inquire what the rule in such a case would be.   This plaintiff appears to have been worth some five or six thousand dollars, his real estate, in the town where he resided and in which the question arose, being somewhat more than two thousand dollars in value.   It was therefore not a case in which the property of the plaintiff was totally exempt from taxation, and over which the defendants had no jurisdiction whatever, but one in which they were authorized and required by law to make an assessment of the property, even if the owner was a minister of the gospel.

The grounds of complaint on the part of the plaintiff, as far as I can collect them from the return, were twofold; *first*, that no allowance or deduction was made, in assessing his property, on account of his being a minister; and *secondly*, that his property was assessed at a higher rate than that of others, so that he was thereby compelled to bear an undue proportion of the public burthens.

There is no evidence in the case, if the fact were material, to show that the defendants did not allow the exemption claimed to the extent of fifteen hundred dollars, and if the plaintiff was

a minister and entitled to that deduction, we cannot presume against the defendants, who were public offiers, that they violated their duty in omitting to make the proper allowance. The presumption is that public officers do their duty, and upon this return it is rather to be inferred that the deduction of fifteen hundred dollars was made. The plaintiff was assessed to the amount of one thousand eight hundred dollars for real and personal property, and which may have been the residue after deducting fifteen hundred dollars, a conclusion very well warranted by the evidence. But in my view of the case, it is not at all material whether the fifteen hundred dollars were or were not deducted by the defendants, or whether the plaintiff's property was assessed at a higher rate than that of others, for in neither event can this action be sustained.

The defendants were assessors of Frankfort, where the plaintiff resided, and as such had jurisdiction over all taxable inhabitants of that town. His real estate in the town exceeded fifteen hundred dollars in value: it was therefore plainly a case in which the defendants had jurisdiction over the property as well as the person of the plaintiff; and it was their imperative duty to ascertain, as far as practicable, the taxable property of the plaintiff, and estimate its true value according to their best information, belief and judgment. (1 *R. S.* 389, *tit.* 2, *art.* 1, 2.) In some particulars the duty of assessors is undoubtedly ministerial; but in fixing the value of taxable property, the power exercised is in its nature purely judicial. With the exception of real and personal estate, the value of which is sworn to as authorized by law, (*id.* 392, 393, §§ 15, 16, 22,) the residue is to be valued, estimated and determined by the assessors. (*Id.* 393, 394, §§ 17, 26.) This is emphatically a judicial act. The writ of *certiorari*, at common law, lies only to officers exercising judicial powers, and to remove proceedings of that character. (*The People* v. *The Mayor &c.* 2 *Hill*, 9, 11; *In the matter of Mount Morris Square, &c. id.* 14, 21, 22.) Yet all the authorities agree that this writ lies to remove an assessment, although, as the allowance of the writ is discretionary, the court, on grounds of public policy and convenience, will ordinarily refuse the writ in cases

of this nature. (*The People* v. *The Supervisors of Allegany*, 15 *Wend.* 198; *The People* v. *The Supervisors of Queens*, 1 *Hill*, 195; *2 id. supra.*) The act complained of in this case was, therefore, a judicial determination. The assessors were judges acting clearly within the scope and limit of their authority. They were not volunteers, but the duty was imperative and compulsory; and acting, as they did, in the performance of a public duty, in its nature judicial, they were not liable to an action, however erroneous or wrongful their determination may have been. This case might be disposed of on narrow ground, for there was no evidence to justify the conclusion that the defendants acted maliciously in fixing the value of the property of the plaintiff or of any one else; and surely it will not be pretended they were liable for a mere error of judgment. But I prefer to place the decision on the broad ground that no public officer is responsible in a civil suit, for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such an officer, for what he does in the performance of a judicial duty. The rule extends to judges from the highest to the lowest; to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power. It of course applies only where the judge or officer had jurisdiction of the particular case, and was authorized to determine it. If he transcends the limits of his authority, he necessarily ceases, in the particular case, to act as a judge, and is responsible for all consequences. But with these limitations the principle of irresponsibility, so far as respects a civil remedy, is as old as the common law itself. The authorities on this subject are almost innumerable. I shall not attempt to state any of them in detail, but will content myself by referring generally to some of the elementary works and adjudged cases, which will be found fully to sustain the principles I have stated. (*Brown on Actions at Law*, 191 to 200; 1 *Chit. Pl. 7th Amer. ed.* 89, 209, 210; 2 *Saund. Pl. & Ev.* 613; 2 *Stark. Ev. 7th Amer. ed.* 586, 588, 1111, 1112; *Broom's Legal Maxims*, 40,

48; *Yates* v. *Lansing*, 5 *John.* 282, *affirmed in error,* 9 *id.* 394; *Cunningham* v. *Bucklin,* 8 *Cowen,* 178; *Easton* v. *Callendar,* 11 *Wend.* 90; *Wilson* v. *The Corporation of New-York,* 1 *Denio,* 598; *Stowball* v. *Ansell, Comb.* 116; *Garnett* v. *Ferrand,* 6 *B. & C.* 611; *Opinion of Chief Justice North in Barnardston* v. *Soame, in the exchequer chamber,* 7 *St. Tr.* 442, *and in* 1 *East,* 568, *note ; Opinion of Burrough, J. in The Duke of Newcastle* v. *Clark,* 8 *Taunt.* 602 ; *Case of Floyd* v. *Barker,* 12 *Coke,* 23; *Evans* v. *Foster,* 1 *New Hamp.* 377 ; *Dicas* v. *Lord Brougham,* 6 *C. & P.* 249; *Gwinne* v. *Poole,* 2 *Lutw.* 387 ; *Brittain* v. *Kinnaird,* 1 *B. & B.* 432 ; *Bigelow* v. *Stearns,* 19 *John.* 39; *Doswell* v. *Impey,* 1 *B. & C.* 163.) The judgment of the common pleas should be affirmed.

Judgment affirmed.