### VAIL *vs.* OWEN and others.

Assessors are not liable, in a civil action, for assessing property which is by law exempt from taxation.

For all the purposes of the assessment, assessors have *jurisdiction* over all the inhabitants of their town. The inquiry which they are required by the statute to make, preparatory to their assessment, is a *judicial act;* and no action can be maintained against them for any error which they may commit in the performance of that duty.

THIS was an action, brought in a justice's court, against the defendants as assessors of the town of Boston, in the county of Erie, for assessing the plaintiff, who claimed to be a minister of the gospel, and that he had not, at the time of such assessment, property exceeding $1500 in value. On the trial, in the justice's court, the plaintiff gave evidence tending to prove the above facts, and that he had paid the tax assessed upon him by the defendants. The plaintiff recovered a judgment in the justice's court, for the amount of the tax, which judgment was affirmed by the county court on appeal, and the defendants below appealed to this court.

*A. Sawin,* for the appellants.

*Horace Boies,* for the respondent.

*By the Court,* GREENE, J. The question in this case is, can the defendants be held liable, in a civil action, for assessing a person who is not liable to assessment. And this question depends upon another, did the defendants, in making this assessment, act judicially ; or, in other words, had they a judgment to exercise in this case, upon the question, whether the plaintiff did or did not belong to that class of persons who, by the provisions of the statute, are exempt from taxation ?

The revised statutes (1 *R. S.* 391, § 8) direct the assessors "to ascertain, by *diligent inquiry,* the names of all the taxable inhabitants in their respective towns, &c., and all the taxable property, real and personal," &c. ; and having done so, they are

required to prepare an assessment roll, in which, among other things, they shall set down "the names of all the taxable inhabitants," &c. The 1st and 2d titles of the chapter of the revised statutes relating to taxation, contain sundry provisions declaring what persons and property shall be liable to taxation, and creating certain exceptions, or exempting certain property and the property of certain *classes of persons*, to a specified amount, from taxation. The 8th sub. of § 4 of tit. 1 provides that the personal property of "every minister of the gospel or priest of any denomination, and the real property occupied by him, to the value of $1500," shall be exempt from taxation. This subdivision exempts the property of a certain *class of persons* from taxation; but how is it to be ascertained what *particular persons* belong to the general class described in the subdivision? The eighth section of title two answers the question, and provides that the assessors shall, by diligent inquiry, ascertain this fact. The law furnishes no rule of evidence for their guide, but leaves the whole question, *for the purposes of the assessment*, to the judgment of the assessors, upon the evidence which their inquiries shall elicit.

I should have had no doubt on this question but for the case of *Prosser* v. *Secor*, (5 *Barb.* 607,) which seems to be entirely in point, and directly opposed to this view of the case. I have examined that case carefully, as well as the authorities cited by the learned justice who delivered the opinion, and in my judgment the case cannot be sustained. The case of *Suydam* v. *Keys*, (13 *John.* 444,) was an action of trover to recover a quantity of flour sold by the defendant as collector of a school district, by virtue of a warrant issued by the trustees, for a tax levied by them. The plaintiff owned some mills in the district, but actually resided in the city of New York. The defendant attempted to justify under the warrant. By the statute under which the trustees acted, the taxable inhabitants of the district were authorized to vote a tax "*upon the resident inhabitants of the district*," and the trustees were required to raise the sum so voted, by a rate-bill, or tax list, on all *such* inhabitants. The court held that the plaintiffs not being taxable inhabitants, the

trustees had no authority to impose a tax on them. This case is an illustration of that class of cases where the action of the officer is void for want of jurisdiction. The plaintiff was not one of the class of persons mentioned in the statute. In regard to *such* persons, the trustees were not charged with the performance of any duty, or the exercise of any power or discretion, and there was no color of authority in the statute for their acts. An example of another class of cases where the assessors have *jurisdiction* but where their acts are *erroneous*, is found in the case of *Henderson* v. *Brown*, (1 *Caines*, 92.) That was an action brought against the collector of the tax levied by the United States, under the act of July 14, 1798. By that act dwelling houses and the lots on which they were erected, were included in one class of taxable property, and were to be taxed in a particular manner; and all lands, except those on which dwelling houses were erected, were included in another class, and subjected to another mode of taxation. The assessors had assessed the plaintiff's theater as a dwelling house. The defendant levied upon a quantity of silver coin to satisfy this tax, and the plaintiff brought an action of trespass. The defendant gave the assessment and warrant in evidence as a justification. It was contended on the part of the plaintiff that the act did not authorize the assessors to assess his theater as a *dwelling house*, and that therefore their acts were void. But the court held that as the assessors had power to tax the property in question, either as a dwelling house or otherwise, the error in taxing it as a dwelling house, when in point of fact it was not such, did not make the proceeding void. This principle is recognized by the case of *Prosser* v. *Secor*, and the distinction between the two classes of cases is a familiar one in the books. The question is, to which class does the case under consideration belong. After citing the provisions of the statute prescribing the duties of assessors, the learned justice who delivered the opinion in that case says, "It will be seen it is made their duty to ascertain who are taxable and who not, by diligent inquiry, and they have no authority to enter any person's name upon the assessment roll whose property is by law exempt

from taxation. They have no *jurisdiction* over such persons or their property." To this proposition I cannot agree. For what purpose are they to ascertain, by the inquiry required by the 8th section, who are taxable inhabitants? The answer is given in the next section, in these words: " they shall prepare an assessment roll in which they shall set down in four separate columns, *and according to the best information in their power*, 1st, in the first column the names of all the taxable inhabitants of the town or ward." The assessment roll is the mere *result of the inquiry* directed by the statute; it is to contain the names of those who have been ascertained by that inquiry to be taxable inhabitants. The inquiry and ascertainment are acts essentially judicial in their nature, involving, in many cases, the decision of questions of law and fact. The law which imposes this duty on its officers cannot reasonably, and in my judgment does not in fact, exact infallibility on their part, or require them to act at their peril in discharging it. The nature of the duty, and the language of the statute prescribing it, are alike inconsistent with this position. The statute requires diligence on their part in prosecuting the inquiries which it directs them to make, and directs them as to the manner of making up their roll. The direction is to place upon the roll the names of the taxable inhabitants, but this is a duty of no little difficulty, in the performance of which errors may frequently occur, notwithstanding the utmost diligence and good faith on the part of the assessors, and the performance of the duty " *according to the best information in their power*," is all that by the language of the statute is, or in the nature of the case can, reasonably be required of the officer.

The case of *Easton and others* v. *Calendar*, (11 *Wend.* 90,) was an action of trespass, brought by the plaintiff against the trustees of a school district who had issued a warrant, upon which the property of the plaintiff had been sold for a tax assessed by them. In making the assessment the trustees had taken the sum voted by the district, and added to it the per centage allowed to the collector, and taken the aggregate as the basis of their apportionment. It was also proved that the

Vail *v.* Owen.

names of some of the taxable inhabitants in the district were not on the list. The court held that the trustees were not liable as trespassers; that they had jurisdiction to make the assessment, and that for the errors committed in doing it, no action would lie against them. Nelson, J. said, "the trustees are to determine who are and who are not taxable, within the provisions of the statute. Sections 76 to 78 (1 *R. S.* 452) show that the duty of ascertaining the taxable inhabitants is involved in considerable difficulty, and that an error in this respect may arise as well from a misjudgment of the law on the part of the officers, as a mistake in fact. *They are bound to act*, and to exercise their best judgment in the apportionment of the tax; and if they confine themselves within the limit of the statute, though they may err in point of law or in judgment, they should not be either civilly or criminally answerable if their motives are pure." Though the case cited cannot be said to be a direct authority upon the point under consideration, the reasoning of the learned justice fully sustains the position I have taken, as to the duty of the assessors to *determine who are and who are not taxable, within the provisions of the statute.* True, they must "confine themselves within the limits of the statute," but to *inquire* and *ascertain* who are taxable inhabitants, and as a necessary consequence, to *determine* in cases of doubt, is the precise duty enjoined upon them by the statute. The facts of this case forcibly illustrate the truth of this proposition. The proof on the trial was, that the plaintiff had preached and officiated as a minister of the Evangelical Lutheran Society, in the town of Eden, several years ago, and that he afterwards preached in Buffalo; that he had since removed on to a farm, and was engaged in farming; that some two or three years before the trial, he said he had quit preaching and gone to farming, and that he had frequently declared that he did not intend to pursue his priestly calling any longer. The whole evidence in the case showed that he was then engaged in farming, and the extent of the evidence tending to show that he was then a minister of the gospel was, that he had preached on one or two occasions a few months before the trial. It was, to say the least of

Vail *v.* Owen.

it, a fair question for the assessors to determine, whether the plaintiff was a "minister of the gospel or priest of any denomination," within the meaning of the statute. The proposition, that "once a priest always a priest," may be well enough as an ecclesiastical maxim, but it will hardly be claimed, I take it, that one who abandons that calling and takes up another, is still entitled to the statute exemption from taxation. If the question of fact was before us, I should have no difficulty in saying that the determination of the assessors upon it was much better justified by the evidence than the verdict of the jury.

Other illustrations might be added. The fourth section of title first, page three hundred and eighty-eight, of the revised statutes, exempts certain property from taxation. The exemptions are not specific, but apply to *classes* of property ; and the duty of ascertaining what is taxable property, when the question arises under one of the general clauses of this section, is often one of the utmost nicety and difficulty. Take, for instance, the very general language of the ninth subdivision, which is, " all property exempted by law from execution." We have a variety of statutes creating those exemptions, under which questions which engage the profound attention and elicit the divided opinions of the ablest jurists, are daily arising. Yet the difficulty in dealing with such questions, which all appreciate, does not absolve the assessors from the duty of *ascertaining* the taxable property of the town, and proceeding to assess it. It seems to me that these considerations give peculiar significance to the language of the ninth section of the statute, directing the manner in which they shall make up their roll, which, while it prescribes specifically the duty, and make its performance imperative, adds to that imperative requirement a qualification suggested by the nature of the duty and dictated alike by the necessity and justice of the case, that they shall perform that duty " according to the best information in their power." If they do that, I know of no principle of law or public policy which requires that they should be held liable for the consequences of an erroneous judgment. The learned presiding justice in the case of *Prosser* v. *Secor* says, " this proposition

Vail *v.* Owen.

would be sound if it were left to the assessors to determine who are and who are not the proper subjects of taxation, and what property should be exempt and what taxed." But as I understand it, the proposition in question rests upon no such assumption. The legislature has determined what *class* of persons and *species* of property shall be liable to taxation; but in order to enforce the statute, it is necessary to determine, as a preliminary step to the assessment, how many, and what particular persons in each town belong to the class, and how much, and what specific property belongs to the species that are by the statute made liable to taxation. This is to be ascertained by inquiry. It is generally a question of fact, but it often involves questions of law, and the duty of making the inquiry and determining the question, in each case, is imposed upon the assessors. The evidence as well in relation to persons as property is often, as we have seen, equivocal, and the question difficult, but the power and duty to decide it are no less clear, and the decision, though erroneous, is no less conclusive in the particular case. It is true, as a general rule, that no officer can acquire jurisdiction by deciding that he has it. But in cases where the fact which confers jurisdiction upon the officer, and upon which his powers are to operate, is expressly referred to his determination, and there is evidence of the fact before him, his decision must necessarily be conclusive as to the existence of that fact. The case of *Brittain* v. *Kinniard*, (1 *Brod. & Bing*. 432,) was an action of trespass, brought against a justice of the peace, for seizing a vessel under a statute making it his duty to seize boats having gunpowder on board. The record of the justice was given in evidence, which recited the fact that the plaintiff unlawfully had in his possession a certain boat, in the Thames, with a quantity of gunpowder on board. The plaintiff offered evidence to show that the vessel seized was not a boat within the meaning of the act. The court held the record conclusive upon the question, and rejected the evidence, and on a motion for a new trial the ruling at nisi prius was unanimously sustained.

It is proper to state that this case has been questioned, and it may be questionable whether this rule was applicable to the

Vail *v.* Owen.

facts of that case.  The seizure authorized by the act was summary, and it does not appear that any preliminary determination of the facts authorizing it was required by the statute.  But in this case, as we have seen, the statute directed the assessors to inquire and ascertain the names of the taxable inhabitants; and the law presumes they did it.  They found the plaintiff an inhabitant of the town, and in possession of property taxable in its character.  *Prima facie* he was a *taxable* inhabitant, and upon the whole evidence, when stated most favorably for him, there was at least a doubtful question of fact, and they decided, upon deliberation, that he was a taxable inhabitant, and assessed him accordingly.

My conclusion therefore is, that the proposition upon which *Prosser* v. *Secor* rests, that the assessors have no *jurisdiction* over such persons as are, by law, exempt from taxation, is wholly untenable.  On the contrary, I submit that for all purposes of the assessment, they have jurisdiction over all the inhabitants of their town ; that the inquiry which they are required by the 8th section to make, preparatory to their assessment, is a judicial act, and that no action can be maintained against them for any error which they may commit in the performance of that duty.  For such errors the party aggrieved must seek another remedy.  The question as to what that remedy is, is not now before us ; but I do not see why the 22d and 23d sections of title 2d may not be so construed as to enable the assessors to give the necessary relief by correcting the assessment, when they meet, pursuant to public notice, for the purpose of revising and completing their roll.  It was said by Justice Beardsley, in the case of *Weaver* v. *Devendorf,* (3 *Denio,* 117,) that a writ of certiorari lies to remove the assessment.  But however this may be, whether by either of these remedies the party aggrieved could obtain adequate relief, or whether he has any remedy at all, as the statute now stands, it is not necessary for us to decide, nor am I disposed to inquire.  I prefer to put the decision of this case on the ground that the idea upon which this action is predicated, is repugnant to legal principles and public policy ; that the protection which the law owes to its officers, and

a proper regard for the peace of society, require that actions of this character should be discountenanced.

The judgment of the county court, and that of the justice, must be reversed.

[GENESEE GENERAL TERM, September 4, 1854. *Marvin, Bowen* and *Greene*, Justices.]