MANNING C. PALMER, Appellant, v. ALMON H. LAWRENCE, Respondent.

(GENERAL TERM, FOURTH DEPARTMENT, MARCH, 1872.)

After jurisdiction acquired, assessors act judicially in determining upon the amount of the assessment, the right to exemption and the liability of the property to assessment, and are not liable for error in the determination.

But assessors must make their assessment at the peril of being made personally responsible if they assess persons who are not inhabitants of their town.

Accordingly, where trustees of a school district erred in determining that the plaintiff was assessable as an inhabitant of their school district where he had taken up his abode temporarily, and assessed him for school purposes, they were held liable for sale of his property under their warrant for collection of the tax.

The cases where inferior tribunals and officers of limited jurisdiction, are required to proceed upon proofs presented to them, and those in which they act ex parte, in determining the question of their jurisdiction, distinguished.

THIS was an appeal by the plaintiff from a judgment entered upon a nonsuit. The facts are stated in the opinion.

*Sedgwick, Kennedy & Tracy*, for the appellant.

*Pratt, Mitchell & Brown*, for the respondent.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. For a number of years prior to February, 1869, the plaintiff resided and did business in the city of Syracuse. In that month he sold the house in which he lived, and hired a house with a few acres of land in the town of Clay for a year, and with his family went into possession of

said premises about the 1st of March of the same year, and continued to reside therein until about November following, when he moved back into the city, where he still resides.

When plaintiff sold his house he intended to purchase another in the city, and intended to occupy the house in Clay only until he could make such purchase.

Within about ten days after he sold, he purchased another place, but as it needed repairing he went to reside on the place in Clay, until such repairs were completed. He moved into the house last purchased before the repairs were fully completed. He took the house in Clay for a year, intending that a sister of his, living south, should occupy it during the residue of the year, from the time he should return to the city.

Plaintiff carried on a clothing store in Syracuse, and while his family were in Clay, he went out to them every night and returned to his place of business in the morning. He cultivated the garden, and pastured a cow and horse on the land.

The residence of the plaintiff, when in Clay, was in school district, No. 12, composed of parts of the towns of Clay and Cicero, in the county of Onondaga.

On the 13th October, 1868, a meeting of the inhabitants of said district was duly convened, and it was resolved to build a new school-house in said district. On the 2d of November another meeting was held and the expense of the house was fixed at not exceeding $2,000.

On the 25th January, 1869, it was voted to raise toward building the said house, by tax on the district, $1,000. This sum was called the first installment for building the house.

On the 13th April, 1869, it was voted to borrow $1,200, to be applied toward erecting the house, and on the 7th June the trustees were directed to borrow $200 more for the same purpose. On the 10th May, 1869, the trustees were directed to raise in addition to the sums previously voted enough to make the sum of $2,800.

On the 6th February, 1869, the school commissioners for

the first commission district of said county authorized the district to raise $2,000 for the purpose of building a school-house in said district, and to levy the sum by tax on the taxable property of said district. The trustees assessed upon the taxable inhabitants the sum of $2,015, being $1,800 for building the new school-house, ninety dollars for interest on money borrowed and applied to the same use, and $125 to pay teachers' wages. Amongst others who were assessed was the plaintiff for $3,000 personal, and the amount of tax was ninety-six dollars.

About the time the assessment was made, the plaintiff told one of the trustees that his residence was in Syracuse; that he was assessed for $3,000 personal, and tried to induce the trustee to omit to assess him, but the latter insisted he was liable to assessment in said district, and he was assessed accordingly.

The trustees on the 28th October, 1869, issued their warrant to the collector of said district, who by virtue thereof seized and sold a wagon belonging to the plaintiff worth $350. For this alleged injury the plaintiff brought this action against Lawrence Millard and Wadkins, the trustees of said district, who issued the warrant. They justified the seizure and sale under the warrant, and proceedings of the district meetings.

On the trial it appeared that the warrant was dated 28th October, 1869, and was renewed by Lawrence and Russell, two of the said trustees, on the 30th November, for thirty days. This renewal was approved by the commissioners of schools. On this proof the defendant moved to discharge the defendant Millard, and he was discharged accordingly.

The court held and decided that, upon evidence, the trustees acted judicially in assessing the plaintiff, and were not liable therefor.

The defendant's counsel insisted that the proceedings to raise the money for the school-house were illegal, as they voted to raise a larger sum than by law they were entitled to do. In support of this branch of the case, the defendant

Palmer *v.* Lawrence.

offered to prove that the trustees collected a tax of $1,000 toward building said school-house, but the objection being taken that the warrant issued must be produced, the defendant was unable to produce it, and failed to show its loss or destruction. Parol evidence of its contents was rejected, and the plaintiff's counsel excepted.

The court thereupon nonsuited the plaintiff, and ordered the motion for a new trial to be heard in the first instance in the General Term.

It will be seen, from the foregoing statement of the proceedings on the trial, that the plaintiff was nonsuited solely on the ground that the trustees had sufficient evidence before them to authorize them to find and decide that the plaintiff was a resident of their district, and that in so deciding they acted judicially, and are not therefore responsible for any error committed by them in so acting. In other words, that their decision that the plaintiff was a taxable inhabitant of their district was a judicial one, and having so decided, they acquired jurisdiction to assess the plaintiff, and to enforce the collection of the tax resulting therefrom, and such decision is a perfect protection to the trustees as well as the collector.

It is an elementary principle of law, that inferior courts and officers of limited jurisdiction are liable if they arrest the person or dispose of the property of the citizen without having acquired jurisdiction so to do (*Bigelow* v. *Stearns*, 12 J. R., 39), and the party affected may show in a collateral action the want of jurisdiction. This principle is subject to this modification, that when certain facts are to be proved before such court or officers in order to confer on it or him jurisdiction of the evidence tending to establish such fact, and is fairly sufficient to call on the court or officers to exercise his judgment as to the sufficiency of such proof, jurisdiction is acquired if the facts are found, although they may not be sufficient in the opinion of a tribunal sitting in a review of such a decision to establish such facts. (*Miller* v. *Brinkerhoff*, 4 Denio, 118; *Staples* v. *Fairchild*, 3 New York, 41; *Skinner* v. *Kelly*, 10 id., 355.)

It is upon this principle that the judge held at the trial that the trustees acquired jurisdiction to assess the plaintiff.

It was known to them that the plaintiff and his family had removed from Syracuse into their district, having hired a house for a year and went to his place of business daily in Syracuse and returned to his family every night.

This was evidence of residence; and if the principle above stated applies to the case, it fully justifies the defendant in deciding that he was a taxable inhabitant of their district. By section 100 of the school act, school district meetings are authorized to lay a tax *on the taxable inhabitants of the district*, to build school-houses, etc.; and by section 126 the trustees are authorized to make out a tax-list of every district tax voted by a district meeting, containing the names of all the taxable inhabitants residing in the district at the time of making out such list, and to annex thereto a warrant for its collection.

From these provisions it follows that, in order to render a person liable to assessment for school purposes, he must be *a taxable inhabitant of the district* when the tax-list is made out by the trustees.

If he is not a taxable inhabitant, the trustees have no jurisdiction to assess him.

In *Suydam* v. *Keyes* (13 J. R., 444), a collector was sued for selling the property of a non-resident to pay a school-tax assessed on him for property owned by him in the district. The court say the trustees had no jurisdiction to assess the plaintiff, as he was not an inhabitant of the district, and both trustees and collector were trespassers. So much of the case as holds the collector liable, has been since repeatedly overruled. But the liability of the trustees has not been questioned except by two or three cases, to be referred to hereafter.

In *Morse* v. *James*, (Wils. 122,) an act of parliament gave an inferior court jurisdiction over minors, it was held that a plea of justification must aver that the defendant was a minor at the commencement of the suit.

A commission of bankruptcy issued against a person

exempt from the operation of the bankrupt law, is void. (*Perkin* v. *Proctor*, 2 Wils., 382.) An act of the legislature of Massachusetts authorized the justice of the peace to issue his warrant for the arrest of persons living in his county found traveling on Sunday; it was held that a person not an inhabitant was not liable to arrest, and as to him the warrant was void. (*Pearce* v. *Atwood*, 13 Mass., 324, 342.)

So if an execution be issued by a justice against a person exempt from such process, the justice is a trespasser. (*Per cival* v. *Jones*, 2 J. Cas., 49; in *Bowman* v. *Russ*, 6 Cow., 234, 237.)

An application was made by the overseer of the poor of a town, pursuant to a statute authorizing it, for a warrant to seize the property of the plaintiff on the ground that he had absconded, leaving his family to be supported by the town. It was held that in an action by the plaintiff for the unlawful taking of his property the overseer must aver that the plaintiff had left his family a charge on the town. Such averment was necessary to give jurisdiction, and plaintiff might rebut it by replication.

A party is not estopped by the proceedings and judgment of an inferior jurisdiction to question its jurisdiction, and enough must be stated by the party who would avail himself of such proceedings and judgment to show that it had jurisdiction.

It was held in *Nichols* v. *Walker* (Cro. Car., 394) that a rate made by the justices of A. on an inhabitant of B. is void.

The Supreme Court of Massachusetts, in *Agry* v. *Young* (11 Mass., 220), held that an action of trespass could be maintained against the assessors of the town of Pittston for illegally assessing the plaintiff, who, when the tax was assessed, was a resident of Hallowell.

In the following cases, the assessors or the churches were held liable for illegally assessing the plaintiffs for the support of divine worship after the plaintiffs had ceased to be connected with the church for whose benefit such taxes were

assessed. (*Ingalls* v. *Bosworth*, 5 Pick., 498; *Sumner* v. *First Parish in Dorchester*, 4 id., 361, *Gage* v. *Currier*, id., 399.)

In *Wise* v. *Withers* (3 Cranch, 331), a collector of militia fines was held liable in trespass for seizing and selling the property of the plaintiff, upon a warrant issued by court-martial in the district, to collect a fine imposed on him for not performing military duty, he being a justice of the peace in said district and by law exempt from such duty.

MARSHALL, C. J., says: It follows that a court-martial has no jurisdiction over a justice of the peace as a militia man; he could never be legally enrolled, and it is a principle that a decision of such a tribunal, in a case clearly without its jurisdiction, cannot protect the officer who executes it.

I shall not refer to any more of the cases on the question of jurisdiction. They will be found collected in 2 C. & H notes, 997, and 998, 1016, etc.

In all the cases cited relating to taxation, those who levied the tax were bound to inquire, before making the assessment, whether the party they proposed to assess was an inhabitant of their town, district or parish, just as the trustees in the case before us were bound to inquire. It is to be presumed they did inquire and became satisfied that the party was a resident; yet their decision, that they were residents, was held not to confer jurisdiction, and of course it followed they were not judicial. If assessors could confer on themselves jurisdiction by deciding that the persons whose names were entered on the list were residents of their towns or districts, the greatest injustice might be done to a large class of persons, without any means of protection against or escape from it.

If residing with one's family for a few days between the 1st of May and the 1st of July is sufficient evidence to authorize the assessors of a town to assesss a person found by them upon such evidence to be a resident, and if such decision is conclusive on the question, a person who goes with his family to Lake George, Saratoga, New York, Sharon and Richfield

Palmer v. Lawrence.

Springs, and thence to Niagara and the lakes lying in the center of the State, may be assessed in each of the counties in which those places of resort are located, and the taxes in each and all enforced against him without notice of being taxed in either, until the collectors, with their warrants in their hands, demand his money or his property to be sold to pay such tax.

It is no answer to say that such an outrage is impossible. If it may occur, we must act on the assumption that it will occur. It is by no means unusual now for a man to be taxed in two and occasionally in three towns, when he is in law and in fact taxable in but one. When assessors find that they may assess any person who appears to reside in their towns and not be personally liable for doing it, it is more than probable that the power will be exercised whenever an opportunity is presented. To prevent this abuse the assessors must make their assessment at the peril of being made personally responsible if they assess persons who are not residents of their towns.

It would seem to be a great hardship to subject men to an action who have in good faith endeavored to perform a duty imposed upon them by law, and for the non-performance of which duty they are liable to punishment. The hardship is very much increased when all the facts and circumstances known to them authorize and justify their action, and the facts which render their action unlawful are known, and from the nature of the case can be known only to the person assessed.

In some of the cases cited from the Massachusetts Reports, the person assessed for the support of the church lived in the parish and actually attended divine service in the church; but as by law a member might obtain from the officers of the church to which he belonged a certificate that he had withdrawn therefrom, and filing it with the officers of another church with which he desired to connect himself, he was not liable to assessment in any church except the one with which he had thus connected himself, and the assessors were held

liable for illegally assessing him, notwithstanding they saw that he was an attendant of the church for which he was assessed, and were not informed that he had united with another church.

The court, in deciding the case, regret the hardship which the decision brought upon the assessors, but the protection of the public demanded that these subordinate officers should not be permitted to secure to themselves personal irresponsibility when acting without jurisdiction by deciding that they had it.

I have searched in vain for a case in which it has been held that a court or officer of limited jurisdiction has been held to have acquired jurisdiction over the person of a man upon *ex parte* evidence, when the law provided for no notice to him of the proceeding and no opportunity of being heard upon the right of the officer to entertain or set on foot the proceeding, except two or three recent cases, which I shall consider before I am through.

In proceedings to obtain attachments against the property of absent, absconding, concealed and non-resident debtors, the application is *ex parte*, and the officer acquires jurisdiction if the proofs offered prove, or fairly tend to prove, the facts required by the statute to be established to entitle the party to the attachment. But the jurisdiction extends only to the issuing of the process and the seizure and sale of the property. No personal liability can be created until the party proceeded against has been served personally, or in some other way provided by the legislature, with notice of the proceedings, and has had an opportunity to contest the jurisdiction of the officer.

But in the case of an assessment, which is to all intents and purposes a judgment against the person assessed, such judgment may be obtained without notice, without an opportunity to contest his liability, until the collector comes with his warrant and seizes his property. This new rule of law is said to be established by the case of *Brown* v. *Smith* (24 Barb., 419), and it is the only case I have found in which the precise point now under consideration has been decided.

The learned judge who wrote the opinion in that case cites no authority in support of his conclusion that the assessors of Plainfield acted judicially in holding the plaintiff's farm assessable in that town when it was in law assessable only in Winfield, Herkimer county, and they were not, for that reason, liable for the erroneous assessment, if it was erroneous; nor does he assume to inquire whether the law, as laid down by the courts, authorized such a conclusion. The hardship of the case was so great that the law was made to bend in order to prevent it. The learned judge cites *Weaver* v. *Devendorf* (3 Den., 117); *Vail* v. *Owen* (19 Barb., 22); *Van Rensselaer* v. *Cottrell* (7 id., 127); *Van Rensselaer* v. *Whitbeck* (7 id., 133).

In *Weaver* v. *Devendorf*, the plaintiff sued the defendants, assessors of Frankfort, Herkimer county, for assessing him when he was by law exempt from assessment. The plaintiff, when he was assessed, was an inhabitant of Frankfort; the assessors, consequently, had jurisdiction over him and over the subject of taxation. They had, therefore, jurisdiction to determine whether the plaintiff was exempt, and their decision was a judicial one, and they were not liable for making it if it was erroneous.

The question now under consideration could not arise in that case, and it furnishes no authority for the proposition that a decision by the assessors that they have jurisdiction is a judicial one, and they are, therefore, relieved from liability.

*Vail* v. *Owen* was, in all respects, like the former. In *Van Rensselaer* v. *Cottrell* and *Same* v. *Whitbeck*, the action was for illegally assessing the plaintiff's land under water, lying in the town of Sand Lake and in the town of Greenbush, of which towns plaintiff was not a resident. This mode of assessing real property is quite different from that of assessing personal. The owner of personal property is taxable for it in the town or ward in which he lives, wherever within the State such property may be. But where real property does not lie in the town or ward in which the owner lives, it

must be assessed to the occupant, if there is one, if not, then as non-resident land.

HARRIS, J., held, that because the land was located in the town in which the assessors acted they had jurisdiction, and, having jurisdiction, they acted judicially in determining how or to whom the land should be assessed. The cases have, therefore, no bearing on the question before us.

There are numerous cases in which it has been held, and it is now the law, that after jurisdiction acquired, the assessors, in determining the amount of the assessment, whether the person assessed is entitled to exemption, and whether the property for which the person is assessed is subject to be assessed, are all questions to be judicially determined by the assessors, and they are not liable for errors committed in so doing. (*Barhydt* v. *Shepard*, 35 N. Y., 238; *The People* v. *Reddy*, 43 Barb., 540; *Henderson* v. *Brown*, 1 Caines., 92; *Hill* v. *Selick*, 21 Barb., 207.)

Whatever weight these cases might be entitled to, they can not overrule the Court of Appeals. That court has decided the very point in the case of *Mygatt* v. *Washburn* (15 N. Y., 316), and in *The People* v. *Supervisors of Chenango* (1 Kern., 573). These cases are alike in their facts, and the same result was arrived at by the Court of Appeals in both.

The action was brought against the defendant, an assessor of Oxford, Chenango county, for illegally assessing the plaintiff in that town, when he (plaintiff) was in fact an inhabitant of the county of Oswego.

The plaintiff resided in Oxford until the 25th of May, 1846, when he removed to Oswego county, where he was assessed and paid taxes for the year 1846.

On the 19th of May of that year the defendant called on the plaintiff, took down his name, and placed opposite to it $10,000 as the valuation of his personal property, and told what he had done.

The assessment was completed, a tax levied against the plaintiff, and a warrant issued to collect the same; and the collector seized and sold the plaintiff's property to pay such tax.

These facts were admitted on the trial; and, also, that the assessors were diligent in their inquiries to ascertain the names of the taxable inhabitants of the town.

The plaintiff recovered at the circuit, the judgment was affirmed at the General Term and by the Court of Appeals; the court holding that assessors, who enter upon their assessment roll, as liable to be taxed for personal property, the name of a person not resident of their town or ward at the time the assessment is made, act without jurisdiction, and are liable for the damages resulting from the collection of a tax founded on such entry.

This is a clear, distinct and unqualified enunciation of the principle of law which applies to and disposes of the case before us.

The respondent's counsel distinguishes the case of Mygatt from the one at bar, by saying that in the case of Mygatt there was no question for an adjudication, as it was conceded on both sides that Mygatt left the town several weeks before the day on which the assessment is by law presumed to be made.

This concession was made on the trial; but it was not conceded that on the 1st of July, when the assessment is presumed to have been made, that the assessors knew Mygatt had removed to Oswego. The concession that the assessors were diligent in their inquiries to ascertain the names of the taxable inhabitants rebuts the idea that they had knowledge of his removal.

It is practically impossible for assessors to know that each person whose name is on the roll is an inhabitant of the town on the day the roll is required to be completed.

They act upon observation made and information received prior to that time; and they necessarily are compelled to assess persons without knowing whether they are in truth inhabitants of the town. Washburn knew that Mygatt was an inhabitant of his town on the 25th of May. This was evidence from which, in ninety-nine cases out of 100, he might safely assume he was still an inhabitant on the 1st of July.

If, then, Mygatt being in Oxford on the 25th of May was any evidence justifying the conclusion that he was there on the 1st of July, his decision that he was a taxable inhabitant was a judicial one.

The court sanction no such doctrines. They were not justified in acting on any proof but that which showed him to be an inhabitant on the 1st of July. Their finding was not of the slightest consequence. Their judicial power did not attach until they established their jurisdiction; not by finding it as a fact, but by proving that they acquired it.

In the case of *Dorwin* v. *Strickland,* decided in this court, the same principles were applied, and the assessors held liable, notwithstanding they had very strong evidence that Dorwin was a resident of their town, while he claimed to live in another town in the same county.

Until the case of *Mygatt* v. *Washburn* shall be reversed, it must be treated as decisive of the liability of assessors under the same circumstances.

If assessors have the power to decide, upon facts known to them, that a person assessed is a resident of their town, it would be a fruitless inquiry to attempt to ascertain how much or how little evidence they acted upon. From the nature of the case, it must consist of the results of their own observation and of information, the extent of which can be known only to themselves. So that it is folly to say, in one case that they had, and in another that they had not, sufficient evidence to authorize them to determine that a person assessed was an inhabitant of their town.

Could it be shown that they had no knowledge whatever as to the residence of the person assessed, it might be held that their want of jurisdiction would be established; but nothing short of that would establish it.

I have not alluded to a class of cases to which reference is sometimes made in support of the right of inferior courts and officers to decide judicially that they have jurisdiction, which decision protects them, although finally held to be erroneous.

I refer to cases of proceedings *in rem,* of which *Brittam*

v. *Kinnard* (1 Brod. & Bing., 432) is a very prominent example. In that case it appeared that justices of the peace were authorized to seize and take possession of any boat which had gunpowder on board; and the defendant, a justice, had seized a vessel with masts, &c., having a large quantity of powder on board. He was sued for such seizure. The plaintiff was nonsuited; the court holding that the justice had jurisdiction of the subject-matter, which was the vessel with powder on board; and having jurisdiction, his decision, that the vessel was a boat, was conclusive, and the action could not be maintained.

This, like other cases to which I have referred, has no application to the one before us. The justice had jurisdiction, not because he found it, but because the property was of a description which the act of parliament placed under his jurisdiction.

I have examined this case at much greater length than the amount involved would either justify or require; but the question is a very important one; and, notwithstanding the Court of Appeals has decided this precise point, the case of *Mygatt* v. *Washburn* is doubted, and a review of the cases seemed to me to be necessary.

The case shows that while the plaintiff was giving evidence to show that he was not a resident of the district, he was told by the court in substance that it was of no moment what facts he might prove, as enough was shown to justify the assessors in deciding that he was a taxable inhabitant of the school district; and as that decision was final and conclusive upon the point, it would be of no avail to show such decision to be erroneous. This ruling was excepted to; and, if the views I have advanced are sound, it was erroneous.

It is unnecessary to consider the other rulings in the case, as a new trial must be granted.

New trial granted, costs to abide event.