HOPE CEMETERY ASSOCIATION, Plaintiff, *v.* ORRIN W. ROSE et al., Defendants.

(Supreme Court, Steuben County, December, 1921.)

Taxation — cemetery lands — former statute exempting land of cemetery association from local taxation, held repealed — description of property — assessment invalid — assessment of land including tax exempt cemetery property, exempts entire plot — assessors individually liable for taxes where assessment made without jurisdiction — exemption not lost by use of unoccupied portion for farming purposes — description — boundaries govern — Laws of 1896, chap. 908, § 4(7), amended by Laws of 1909, chap. 62; Laws of 1847, chap. 133, § 10; Laws of 1879, chap. 310.

Before the statute (Laws of 1896, chap. 908, § 4(7), now Laws of 1909, chap. 62, same section and subdivision) all lands of cemetery associations whether organized under chapter 133 of the Laws of 1847, or chapter 310 of the Laws of 1879, and whether actually used for cemetery purposes or otherwise were

absolutely. and entirely exempt from taxation, but by the addition of such changes in phraseology as were deemed necessary in rewriting the law, the entire law upon this subject was changed.

The statute (Laws of 1847, chap. 133, § 10) which expressly exempts from local taxation all cemetery lands of any association organized pursuant thereto is so inconsistent with the later statutes (Laws of 1896, chap. 908; Laws of 1909, chap. 62) that it must be conclusively deemed to have been repealed thereby though not expressly included in the repealing section of either of those statutes. It does not follow, however, that all land not actually occupied by graves is taxable.

In an action to recover money paid for taxes by a cemetery association organized under chapter 133 of the Laws of 1847 it appeared that the greater part of a tract of land purchased by the plaintiff years ago to be used as an annex to the cemetery grounds then owned by plaintiff in the city of Corning, N. Y., lies in about the same condition as when purchased. *Held,* that the right of such lands to exemption from taxation under the statute was not lost by proof that plaintiff in an endeavor to avoid unnecessary expenditure for care and upkeep derived some income from the use of the unoccupied part of its lands for farming purposes.

The local assessors in the *bona fide* belief that such lands were being so used and that plaintiff was reaping the incidental benefit, after consultation with the attorney-general and the officials of the state tax department, assessed said lands in 1914, 1915 and 1916 upon the tax rolls of the city in substantially this language: "Twenty acres on south side of City line, bounded north by City of Corning, south and east by land of Joel Wicks, and west by land of Robert O. Hayt." *Held,* that under the rule that where both quantity of land and specific boundaries are included in a description, the boundaries must govern, the assessment was in any event entirely without warrant of law.

The power to determine what property shall be exempted from taxation is vested solely in the legislature and the defendant assessors having assessed the entire tract, a part of which has been plotted and improved and is now occupied by graves, tombstones and similar memorials, and clearly exempt from taxation, the defendants are individually liable upon the ground that in making the assessments they acted without jurisdiction, and judgment is directed in favor of plaintiff.

Action to recover taxes.

Francis C. Williams, for plaintiff.

Frank H. Hausner, for defendant.

Sawyer, J.   Hope Cemetery is the main Protestant cemetery in the city of Corning and vicinity.   It is owned and managed by this plaintiff, a corporation duly organized under chapter 133 of the Laws of 1847. Some years ago it purchased a tract of land of about thirty-three acres to be used as an annex to the cemetery grounds it then owned and managed and which in the passage of time had become well filled with graves.   The land so purchased as yet lies in the same condition as when purchased except that about four or five acres in its northwest corner have been plotted and to some extent used as burial places, and a number of trees have been set out upon the land generally.

Prior to 1914 these defendants, who were then the assessors of said city of Corning, acting in the *bona fide* belief that the unimproved part of such lands were being used for ordinary farming purposes and that plaintiff was deriving an income therefrom, after consultation with the attorney-general of the state of New York and the officials of the tax department of said state, deemed them subject to taxation, and in the years 1914, 1915 and 1916 assessed them against plaintiff upon the tax rolls of said town of Corning in substantially this language: '' Twenty acres on south side of City line, bounded north by City of Corning, south and east by land of Joel Wicks, and west by land of Robert O. Hayt.''

Taxes were extended upon such assessments for each of those years, and remaining unpaid, the lands were afterwards sold for the collection thereof.   From such tax sale plaintiff was subsequently obliged to

redeem and now brings this action to recover from defendants individually the amount so paid upon the theory that same were exempt from taxation and defendants, therefore, without jurisdiction to include them in the town assessment-rolls. Section 10 of chapter 133 of the Laws of 1847 expressly exempts from such taxation all cemetery lands of any association formed pursuant to the act.

Between the year 1828 and that of 1889 no general revision of the Tax Law was had, and much confusion came to exist by reason of the fact that in the interim something more than 100 distinct laws bearing upon the subject, some general and some special, had crept into the statute books. In the latter year the legislature took the matter up for consideration with the result that after several abortive efforts the tax laws were entirely overhauled and codified by chapter 908 of the Laws of 1896, the preliminary examination and work having been done by a commission known as the statutory revision commission. This commission in its report, after pointing out sundry specific changes which had been made, stated it had made in addition such changes in phraseology as were necessary in rewriting the law; one of these so called changes in phraseology bears directly upon the instant controversy for after providing that the real property of a corporation or an association organized exclusively for various purposes, including cemetery purposes, shall be exempt from taxation (chap. 908, § 4, subd. 7) the act states that: "The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes shall not be so exempt; but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying

out thereupon one or more of such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining portion of such lot or building to the extent of the value of such remaining portion shall be subject to taxation."

This quoted statute of 1896 has been carried into the present law (Laws of 1909, chap. 62) where it is to be found under the same section and subdivision number, and is now the law of the commonwealth. Such "necessary change in phraseology" changed the entire law upon this subject, for before its enactment all lands of cemetery associations, whether organized under the act of 1847 or that of 1879, and whether actually used for cemetery purposes or otherwise were absolutely and entirely exempt from taxation. *People ex rel. Oak Hill Cemetery Assoc.* v. *Pratt,* 129 N. Y. 68–74.

While not expressly included in the repealing section of either the Tax Law of 1896 or that of 1909, those acts are so inconsistent with section 10 of the Laws of 1847 that same must be conclusively deemed to have been repealed thereby. *Matter of Huntington,* 168 N. Y. 399; *Pratt Institute* v. *New York,* 183 id. 151; *People ex rel. Cooper Union* v. *Gass,* 190 id. 323; *Peterson* v. *Martino,* 210 id. 412.

It does not, however, follow that all land not actually occupied by graves belonging to such an association is taxable; neither does its subjection to that burden follow from the mere fact that it has some portion leased for monetary consideration. As I view it, such a corporation in order to gain the benefit of the exemption law is not obliged to permit its unoccupied land to remain uncared for, thus detracting from beauty of scene and surroundings desired by average persons for the final resting place of loved ones

whose memory is still fragrant. Neither is such an association required to balance the difference between the cost of keeping its unoccupied grounds in order and the tax which would probably be assessed against them if use be made by sale or otherwise of their natural products, and act at its peril. It may on the contrary adopt such plan for keeping its unused lands in order as may be most advantageous from all standpoints, and its exemption is not lost even though it derive some benefit in addition to that coming from improved appearance. *People ex rel. Buffalo B. P. Assn.* v. *Stillwell,* 190 N. Y. 284. The last named action arose after the enactment of the Tax Law of 1896 and involved a question very similar to that here presented; Judge O'Brien, writing for the Court of Appeals, pointed out clearly and unmistakably the rule which is to be applied, having in view the change of the statute from an entire to a limited exemption, and it may not be amiss to quote his language: '' The cemetery in question was, to use a business expression, a going and growing concern. It was not all occupied by burial plots or by the graves of the dead. It may not be fully occupied for such purposes for many years to come. Of course, it is not necessary that the cemetery should be filled with graves in order to be entitled to the exemption, and the mere fact that Brennan had leased an unoccupied portion of the cemetery for a sum of one hundred and twenty-five dollars would not necessarily deprive the relator of the exemption. If, for example, he had paid that sum of money for the right to cut and carry away the grass from the unoccupied land, and the money paid by him went into the relator's treasury to be used for taking care of the ground already occupied, that would not change the character of the land as cemetery land, nor deprive the corporation of the

benefit of the exemption.  We do not know what the
real facts are in regard to this leasing and occupa-
tion,  *  *  *.  Of course, if the relator has leased the
land for farming purposes and it is used in the ordi-
nary way as farmers use their land  *  *  * the case
might be different, and under such circumstances the
land ought to be taxed and would be taxable.  Hence,
the real facts that relate to the leasing and occupation
must be found before we can say that the relator is
not entitled to the exemption."  P. 291 *et seq.*

In other words, the question as to whether such
lands are under the present statute taxable or exempt
from taxation depends always upon the facts sur-
rounding their user.  In the case at bar this question
was most earnestly litigated and upon such contro-
verted question of fact I am inclined to believe that
the plaintiff did not hold and use its unoccupied lands
as a business or money making proposition, but that it
had endeavored to avoid unnecessary expenditure for
their care and upkeep; at the same time reaping such
incidental benefit as might come therefrom.  This
conclusion is not weakened or altered by the fact that
in one year a small portion of the land was cultivated
upon shares through an arrangement unknown to its
officers with plaintiff's caretaker.  In other words, I
am led from the testimony to believe that such use as
the plaintiff has made of the lands has not caused them
to lose their exemption from taxation.  In this con-
clusion no consideration is given to the fact that the
assessments complained of, while stated to cover
twenty acres of land, are described by boundaries in
such manner as to include the entire tract.  As has
been said, some four or five acres of this land have
been plotted and improved and are now occupied by
graves, tombstones, and similar memorials.  The well
understood rule is that where both quantity of land

and specific boundaries are included in a description, the boundaries must govern; it would appear from this that the assessments complained of were in any event entirely without warrant of law.

This brings us to another question which is sharply presented and has been elaborately argued. Recovery is sought against defendants individually upon the ground that in the making of the assessment in question they acted without jurisdiction and in violation of their duty. *Prosser* v. *Secor,* 5 Barb. 607; *Lapolt* v. *Maltby,* 10 Misc. Rep. 330; *N. Y. Milk Products* v. *Damon,* 57 App. Div. 261; *Mygatt* v. *Washburn,* 15 N. Y. 316; *Dorwin* v. *Strickland,* 57 id. 492; *Hilton* v. *Fonda,* 86 id. 340.

The rule in this state seems that the duties of tax assessors, being *quasi* judicial in character, if they keep within their authority and act honestly, and in good faith, and with a common degree of care and prudence they are not answerable in damages for errors, mistakes, inaccuracies or bad judgment in assessments. This is sustained by a long line of authorities, beginning with the construction of the revised statutes of 1828, and involving most if not all of the intermediate, special, and general statutes, the Tax Law of 1896, as well as that now in force known as chapter 60 of the Consolidated Laws. *Vail* v. *Owen,* 19 Barb. 22; *Brown* v. *Smith,* 24 id. 419; *Tucker* v. *City of Utica,* 35 App. Div. 173–176; *Board of Education* v. *Henderson,* 42 id. 237; *Swift* v. *Poughkeepsie,* 37 N. Y. 511; *Bell* v. *Pierce,* 51 id. 12; *Nat. Bank Chemung* v. *Elmira,* 53 id. 49; *U. S. Trust Co.* v. *Mayor, etc.,* 144 id. 488–492; *Elmhurst Fire Co.* v. *City of New York,* 213 id. 87.

It is not within the province of assessors to determine what property shall be exempt from taxation; that power is vested solely in the legislature, and if the assessors undertake to subject to taxation prop-

erty made by it exempt, they are acting without juris-
diction, and are personally liable in the same manner
as for assessment against one not a taxable inhabitant
of their subdivision.  Where, however, the statute pro-
vides that property may or may not be exempt as cir-
cumstances existing at the time of the assessment may
be, leaving it to the assessors to determine the fact,
in making such determination they act judicially, and
within the scope of their authority.  Their decision is
not conclusive, but in its making they act judicially and
are protected from personal responsibility precisely
the same as they are in case of mistaken judgment as
to value; the distinction is found in the difference
between illegal and erroneous assessment; where no
power is given them to assess, they are personally
responsible.  Where they may or may not assess, a
decision upon their part may be erroneous, but it is
not illegal, and no personal responsibility can be pred-
icated thereon.

From what has been said it follows that these
defendants in passing upon the question as to whether
that portion of plaintiff's lands not plotted and opened
for cemetery purposes were subject to taxation would
have been engaged in a judicial act for which they are
not personally responsible even though mistaken in
their conclusion.  Unfortunately they have assessed
the entire tract, not only that the exemption of which
they were required to determine, but as well that
which is clearly exempt.  The nature of the assessment
is such that there can be no division between respon-
sibility and nonresponsibility, and they are not shel-
tered by the rule above stated.

Defendants' preliminary motions are denied with
exception and judgment directed for plaintiff, with
costs.

Ordered accordingly.